### Jeffrey S. CAHOON, M.D. and Shari A. Kohne and Edward L. Kennedy, Co-Executors of the Estate of Robert W. Kohne, M.D., Appellants (Defendants Below),

v.

### Glessie Joann CUMMINGS, wife of the deceased, William T. Cummings, Appellee (Plaintiff Below).

#### No. 79S05–0009–CV–513.

Supreme Court of Indiana.

Sept. 1, 2000.

Kevin C. Schiferl, Robert W. Wright, Julia Blackwell Gelinas, Steven J. Cohen, Kathryn A. Elias, Indianapolis, Indiana, Attorneys for Appellants.

Terry Kaiser Park, Indianapolis, Indiana, Attorney for Appellee.

Defense Trial Counsel, Ross E. Rudolph, James D. Johnson, Evansville, Indiana, Amicus Curiae.

Indiana Trial Lawyer Association, Jerry Garau, Mary A. Findling, Indianapolis, Indiana, Amicus Curiae.

## ON PETITION TO TRANSFER

BOEHM, Justice.

*Mayhue v. Sparkman*, 653 N.E.2d 1384, 1388–89 (Ind.1995), held that where a patient's likelihood of recovery is less than

fifty percent, but negligent treatment increased the risk of loss, a claim may be asserted for that increased risk. We grant transfer and hold that damages for such a claim are to be measured in proportion to the increased risk, and not by the full extent of the ultimate injury.

### Factual and Procedural Background

In December of 1991, William T. Cummings sought the treatment of his family doctor, Dr. Robert W. Kohne, for heartburn-like symptoms. Kohne ordered x-rays of Cummings' esophagus, stomach, and small bowel. The x-rays were interpreted by Dr. Jeffrey S. Cahoon, who diagnosed Cummings with a hiatal hernia and reflux esophagitis. Cummings asked Kohne whether surgery would correct the problem, but Kohne told him he could not have surgery "at [his] weight." Instead, Kohne directed Cummings to lose weight, refrain from eating greasy foods, and sleep sitting up. In July 1992, after Cummings had lost about eighty pounds, he returned to Kohne. Cummings' insurance carrier had changed, so Kohne arranged for further consultation and treatment at the V.A. hospital in Danville, Illinois. Before Cummings could obtain treatment, however, he admitted himself to the emergency room of St. Elizabeth's Hospital in Lafayette, Indiana with a perforated esophagus that had hemorrhaged. Cummings was then diagnosed as suffering from esophageal cancer. Surgery and subsequent chemotherapy were tried, but the cancer had already spread to Cummings' lymph nodes and liver. He died in August of 1993.

Cummings filed a proposed complaint with the Indiana Department of Insurance in March of 1993. The complaint as amended charged Kohne with negligent failure to diagnose and Cahoon with negligent misdiagnosis of Cummings' condition. The Medical Review Panel concluded that the doctors had failed to follow the appropriate standard of care, but that their conduct "was not a factor of the resultant damages." After Cummings' death, his wife, Joann, brought suit alleging damages

in the form of medical expenses, lost income, loss of substantial chance of survival, death, and loss of consortium.

Kohne died in March of 1996, prior to trial. Both he and Cahoon admitted breach of his duty of care to Cummings, but each denied that his breach proximately caused Cummings' damages. After a three-day trial in late September and early October of 1997, a jury found in favor of Joann, and awarded her $194,000 from Kohne's estate and $75,000 from Cahoon. Joann filed a post-trial motion for prejudgment interest, which was denied as to Kohne, but granted as to Cahoon in the amount of $18,443.84.

All parties appealed. Joann challenged the trial court's denial of prejudgment interest with respect to Kohne. The defendants challenged the trial court's jury instructions, arguing that: (1) the jury was incorrectly instructed that causation should be evaluated under the *Mayhue* standard; (2) the jury was incorrectly instructed that full damages could be awarded if the defendants' conduct was found to be a substantial factor in bringing about Cummings' death; (3) the trial court erroneously gave instructions on both wrongful death and survival; and (4) the survival instruction contained an incorrect statement of law in that it referenced "loss of chance" approvingly. Kohne also contended that the trial court had erroneously admitted evidence that he had altered Cummings' medical records.

The Court of Appeals concluded that these jury instructions were proper in every respect, save that the survival instruction erroneously recited "loss of chance" as the law in Indiana. *See Cahoon v. Cummings*, 715 N.E.2d 1, 9 (Ind.Ct.App.1999). The Court of Appeals also concluded that the trial court erred in admitting evidence that Kohne had altered Cummings' medical records. *See id.* at 17. With regard to prejudgment interest, the Court of Appeals reversed the trial court's award of prejudgment interest with respect to Cahoon, and affirmed its denial of prejudg-

ment interest with respect to Kohne. *See id.* at 17–18.

All parties seek transfer. We conclude: (1) the trial court correctly applied the causation standard of *Mayhue* in the wrongful death context; (2) it was reversible error to instruct the jury that it should award full damages if it found that defendants' negligence was a substantial factor in Cummings' death; (3) the doctrine of election of remedies does not preclude Joann from pursuing both a wrongful death and survivorship action; (4) the instruction regarding Cummings' survival action did not contain a misstatement of law requiring reversal; (5) the trial court did not abuse its discretion in admitting evidence that Kohne had altered Cummings' medical records; and (6) the trial court erroneously concluded that Joann was not entitled to prejudgment interest as against Kohne.

## I. The Application of *Mayhue* to a Wrongful Death Suit

In *Mayhue v. Sparkman*, 653 N.E.2d 1384, 1388–89 (1995), this Court held that a plaintiff is not precluded from bringing a medical malpractice claim against a negligent doctor merely because the plaintiff is unable to prove by a preponderance of the evidence that the doctor's conduct was the proximate cause of the resulting injury. We adopted Section 323 of the Restatement of Torts, which reads:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if:

(a) his failure to exercise such care increases the risk of such harm, or;

(b) the harm is suffered because of the other's reliance upon the undertaking.

■ This doctrine permits recovery from a defendant whose negligence significantly increases the probability of the ultimate harm, even if the likelihood of incurring that injury was greater than fifty percent in the absence of the defendant's negligence. Here, as in *Mayhue*, all experts agreed that Cummings would probably not have survived even if he had been properly diagnosed and treated in December of 1991. However, Cummings' expert testified that Cummings would have had a statistically significant chance, perhaps twenty-five to thirty percent, of surviving his esophageal cancer if it had been diagnosed at Cummings' first visit to Kohne. The defendants maintain that the relaxed causation standard of *Mayhue* is inapplicable in a wrongful death case because the wrongful death statute, by its terms, demands that the defendant's actions be the proximate cause of the death of the victim. The relevant provision reads:

When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she ... lived, against the latter for an injury for the same act or omission.

Ind.Code § 34–23–1–1 (1998).[1] The Court of Appeals held that the causation standard of *Mayhue* applied in the context of the wrongful death action, concluding that: "[T]he intent of the wrongful death statute was to allow an action to be brought by the decedent's personal representative against a defendant who may be held legally liable for the death, regardless of the mechanism of liability." *Cahoon*, 715 N.E.2d at 7. We agree with the Court of Appeals that the statute is consistent with the *Mayhue* standard of causation. The wrongful death statute requires causation, but it does not spell out what is meant by that term and does not specify that a plaintiff must establish proximate causation. The trial court instructed the jury on the cau-

---

1. This section was formerly codified at Indiana Code § 34–1–1–2.

sation standard of *Mayhue* as follows: "In this case you must first determine if the Defendant's negligence increased the risk of harm to Ted Cummings, and whether the increased risk was a substantial factor in his death on August 15, 1993." This is an accurate recitation of the causation standard of *Mayhue*. *Mayhue* identified the reasons to permit recovery in a loss of consortium case for increased risk of the ultimate injury—in that case death. Principally, to deny recovery is to encourage disregard for the proper care of more seriously ill patients. Those with serious problems but also a significant chance of recovery are entitled to the same level of care as less threatened patients, and their caregivers should be held to the same standard. Accordingly, this instruction was properly given.

Finally, the defendants note that *Mayhue* presented a loss of consortium claim and urge this Court to limit *Mayhue* to its facts. Although it is true that *Mayhue* involved a loss of consortium claim, the policy underlying *Mayhue* is equally compelling here. We see no basis to allow a relaxed standard of causation in the loss of consortium context, but not the wrongful death context. The wrongful death statute is intended to provide economic support to survivors, and a loss of consortium claim compensates the plaintiff for loss of companionship of the decedent. The issue addressed in *Mayhue* is the level of causation required, not the type of claim brought. This is the same because the event giving rise to each injury—the death—is the same. Consistent with other jurisdictions, we hold that Section 323 applies in the wrongful death context.[2] *See, e.g., McKellips v. Saint Francis Hosp., Inc.*, 741 P.2d 467, 469–70 (Okla.1987); *Perez v. Las Vegas Med. Ctr.*, 107 Nev. 1, 805 P.2d 589, 591 (1991) (following *McKellips* ).

## II. Damages

The trial court instructed that the defendants would be liable for full wrong-

ful death damages if the jury determined that their actions were a substantial factor in Cummings' death. The Court of Appeals majority agreed, concluding that once causation is established under *Mayhue*, full damages for the underlying injury follow. The majority reasoned that this Court, citing *McKellips v. Saint Francis Hospital, Inc.*, 741 P.2d 467 (Okla.1987), intended that full damages follow because a proportional damages scheme would have required significant further discussion by this Court. The Court of Appeals also concluded that Section 323, by its express language, provides for liability for the harm, not for the "portion of the risk which was increased." *Cahoon*, 715 N.E.2d at 8. Judge Sullivan dissented as to this issue.

The Court of Appeals majority correctly pointed out that *Mayhue* did not discuss the issue of damages. However, *Mayhue* relied on *McKellips*, which viewed Section 323 as indistinguishable from "loss of chance" and awarded damages in proportion to the increased risk attributable to the defendant's actions. *See* 741 P.2d at 475–76. In *McKellips*, the decedent was misdiagnosed in the emergency room as suffering from gastritis. Although an expert testified that the heart attack from which he subsequently died was probably "well under way" by the time he checked into the emergency room, the Supreme Court of Oklahoma nevertheless concluded that a relaxed causation standard should apply, and that proportional damages should be awarded if a jury concluded that the defendant's negligence contributed to the patient's death. In order to determine proportional damages, after liability is established, statistical evidence is admissible to determine the "net reduced figure." *McKellips*, 741 P.2d at 476–77. This, the court explained, is determined by subtracting the decedent's postnegligence chance of survival from the prenegligence chance of survival. Then, "[t]he amount of dam-

2. The Court of Appeals also discussed whether Joann could maintain a separate cause of action for loss of consortium in addition to a wrongful death claim. *See Cahoon*, 715 N.E.2d at 10. Neither party addressed this issue, so we do not.

ages recoverable is equal to the percent of chance lost multiplied by the total amount of damages which are ordinarily allowed in a wrongful death action." *Id. McKellips* is one of many cases that award damages proportional to the defendant's contribution to the underlying injury. *See Delaney v. Cade*, 255 Kan. 199, 873 P.2d 175, 186 (1994); *Roberts v. Ohio Permanente Med. Group, Inc.*, 76 Ohio St.3d 483, 668 N.E.2d 480, 484–85 (1996); *Gray v. Ford Motor Co.*, 914 S.W.2d 464, 466–67 (Tenn.1996) (applying comparative fault principles to medical malpractice action); *see also Soper v. Bopp*, 990 S.W.2d 147, 150–51 (Mo.Ct. App.1999) (" '[I]n the end, damages can only be expressed by multiplying the value of a lost life or limb by the chance of recovery lost.' ") (citations omitted).

Holding the defendant liable for the full value of the wrongful death claim is inconsistent with the statutory requirement that the loss be caused by the defendant who only increased the risk of an already likely result. In effect, it would hold doctors liable not only for their own negligence, but also for their patients' illnesses, which are not the product of the doctors' actions. To be sure, this rule might encourage doctors to be more vigilant, but compensation for injuries caused, not deterrence of future actions, is the basis of recovery the legislature has chosen for a wrongful death.

There is little support in other jurisdictions for the practice of awarding damages measured by the full value of the injury in a Section 323 or "loss of chance" case. *See Weymers v. Khera*, 454 Mich. 639, 563 N.W.2d 647, 653 n. 17 (1997) (noting that "only five states follow this extreme approach"). We conclude that the better approach is that followed in *McKellips* and other proportional damages jurisdictions. *See* 741 P.2d at 476–77; *see also Herskovits v. Group Health Coop.*, 99 Wash.2d 609, 664 P.2d 474, 479 (1983) ("Causing reduction of the opportunity to recover (loss of chance) by one's negligence, however, does not necessitate a total recovery

against the negligent party for all damages caused by the victim's death."). This rule is also consistent with the legislative policy underlying Indiana law of apportionment of damages for tort liability generally. Under Indiana's comparative fault scheme, a defendant is liable only to the degree he or she is responsible for the claimant's injury or damages. *See* Ind.Code § 34–51–2–1 to 19 (1998).

■ In sum, we agree with Judge Sullivan's dissent, and hold that upon a showing of causation under *Mayhue*, damages are proportional to the increased risk attributable to the defendant's negligent act or omission. The jury was properly instructed that damages could not be awarded under both the survival and wrongful death claims. However, the jury did not identify the theory of recovery under which damages were awarded against either defendant. As a result, we cannot assign the award to either the wrongful death claim or the survivor count. And because the jury was instructed to award full wrongful death damages if a defendant's conduct was a "substantial factor" in Cummings' death, the degree of increased risk was not quantified and we have no basis to conclude that any specific dollar award is proper under that theory. In sum, the amount of any award for wrongful death is unknowable and it is equally unknowable whether the survivor theory supported the jury's award. As a result, remand for a new trial is required.

### III. Election of Remedies

The defendants assert that it was error for the trial judge to allow jury instructions as to both wrongful death and survival actions. They argue that a plaintiff must elect between a survival action and a wrongful death action prior to trial because they are inconsistent and mutually exclusive theories of recovery. According to defendants, it is prejudicial to them to allow evidence of Cummings' pain and suffering under the survival claim because this evidence could inflate a damage award

on the wrongful death action. They argue that the trial court's jury instruction informing jurors that they could not award damages for both wrongful death and a survival action was insufficient to cure the harm resulting from allowing pain and suffering evidence. The Court of Appeals concluded, in a thoughtful analysis of the doctrine of election of remedies, that Joann was not required to elect a remedy prior to trial. We agree.

The election of remedies doctrine requires that a party who has two co-existing but inconsistent remedies and elects to pursue one remedy to a conclusion may not sue on the other remedy. *Hoover v. Hearth & Home Design Ctr., Inc.*, 654 N.E.2d 744, 745 (Ind.1995). The doctrine ordinarily applies only when a party has elected to pursue one remedy to its conclusion and then attempts to pursue a subsequent claim on a second inconsistent theory. *See Parke v. First Nat'l Bank*, 571 N.E.2d 1317, 1319 (Ind.Ct.App. 1991).

Trial Rule 8(E)(2) allows a party to plead alternative and even inconsistent theories of recovery: "A pleading may ... state as many separate claims or defenses as the pleader has regardless of consistency and whether based on legal or equitable grounds." Under this Rule, a party is not required to adopt a theory of the case at the outset. *See Palacios v. Kline*, 566 N.E.2d 573, 576 (Ind.Ct.App.1991). Rather, it is sufficient to plead the operative facts of the case so the defendant is put on notice as to the evidence that will be presented at trial. *See id.* Thus, although defendants must receive notice as to what evidence will be presented against them, there is no procedural bar to pursuing both a wrongful death and survival action.[3] Cf. *Olympia Hotels Corp. v. Johnson Wax*

*Dev. Corp.*, 908 F.2d 1363, 1371 (7th Cir. 1990) (concluding that, in contract case, the adoption of Rule 8(E) has abolished the requirement for election of remedies at the pleading stage in the federal courts).

Defendants nevertheless urge that a plaintiff should in some instances be required to elect a remedy before trial to avoid prejudice to the defendant. Although this Court is mindful of the practical difficulties of defending on two separate theories, there is scant precedential support for the proposition that it may not be attempted. The Court of Appeals has held that, under some circumstances, concurrent pursuit of two or more remedies may be barred. *See, e.g., City of Hammond v. Beiriger*, 164 Ind. Ct.App. 275, 280, 328 N.E.2d 466, 469 (1975) ("[W]hen the remedies available to a prospective litigant are inconsistent or mutually exclusive ... the election of one remedy will operate as a bar to concurrent or subsequent remedies."). None of the cited cases had occasion to address the issue of "concurrent remedies" in light of Rule 8(E), and defendants point to no case in which a party has been forced to elect a remedy prior to trial to avoid prejudice to the defendants in having to defend against inconsistent theories of recovery.

Defendants rely heavily on *American International Adjustment Co. v. Galvin*, 86 F.3d 1455, 1458 (7th Cir.1996), in which the Seventh Circuit noted that the admission of a tape of the last moments of the decedent's life—admissible as evidence of pain and suffering for the survival action—had likely inflated the wrongful death award. *Galvin*, however, does not hold that a plaintiff may not concurrently pursue both a survival cause of action and a wrongful death claim. Rather, in *Galvin*,

---

**3.** We note that neither the complaint nor the three amended versions of the complaint contain more than the loosest reference to a survival action, and no reference to damages for pain and suffering, an element commonly sought in survival actions. We do not address whether Joann might have been barred from pursuing a remedy not reflected in her complaint because this issue has not been briefed by either party. Although the defendants objected to the jury instruction referencing a survival action, they did not do so on the basis that this theory was not articulated in the complaint.

the court noted that defense counsel's motion in limine seeking to require election of remedies, which had been denied, ran counter to the abolition of the theory pleading requirement. 86 F.3d at 1460. What *Galvin* does suggest is that evidence as to damages on a theory unsupported by the evidence is inadmissible. *See id.* at 1458–59. This is simply another way of saying that irrelevant evidence is inadmissible, regardless of how the claim is pleaded. Thus, if it is clear that the decedent's death was caused by the defendant's actions, only damages for wrongful death, and not those for a survival action, could be shown. Here, however, there was evidence to support both theories. *Galvin* also observes that under Indiana law damages cannot be awarded for both a wrongful death claim and a survival claim. *See id.* at 1457–58. In *Galvin,* however, unlike here, there was no jury instruction given to that effect.

The defendants also rely on *Osborne v. Wenger,* 572 N.E.2d 1343, 1346 (Ind.Ct. App.1991), in which the Court of Appeals held that the trial court had not erred in requiring the plaintiff to choose between pursuing treble damages and punitive damages. The recovery of both treble damages and punitive damages is prohibited by statute in a civil action by a crime victim. *See* Ind.Code 34–24–3–3 (1998).[4] *Osborne* made no mention of Rule 8(E). Whether or not it was correct to affirm the trial court's requirement that the plaintiff specify the remedy sought for a single wrong, it is not reversible error to permit the plaintiff to proceed on alternative inconsistent theories under instructions that preclude recovery on both.[5]

In sum, Trial Rule 8(E) is designed to avoid the problem that a plaintiff may recover nothing on a valid claim if forced to speculate as to which theory a jury will ultimately find credible. What remains of the election of remedies doctrine after the adoption of Trial Rule 8(E) is substantive law that acts as a bar to double recovery. *See Olympia Hotels,* 908 F.2d at 1371 ("In its substantive aspect, however, the doctrine of election of remedies is not affected by the federal rules of procedure.... It seeks to prevent double recovery."). The wrongful death statute requires proof that the defendant caused the death of the plaintiff. Under the survival statute, "[W]hen a person receives personal injuries caused by the wrongful act or omission of another and subsequently dies from causes other than those personal injuries, the personal representative ... may maintain an action." Ind.Code § 34–9–3–4 (1998).[6] If there is no dispute regarding the cause of the decedent's death, it is obvious that only one theory of recovery may be pursued. Here, in contrast, defendants admitted that they had breached a duty to Cummings, and causation was the primary issue for the jury. The trial court's instruction informing the jury that it could not grant damages on both theories was sufficient to ensure that double recovery would be avoided. The trial court was correct to allow Joann to pursue both theories to verdict.

## IV. Survival Instruction

■ Defendants assert that the trial court instruction regarding survival actions misstated the law. The instruction read:

If you determine that the Defendant's negligence was not a substantial factor in Mr. Cummings' death, but the Defendant's negligence increased the risk of harm to Mr. Cummings by reducing his opportunity for a better result, and that increased risk was a substantial factor in that harm, then you should award such

---

**4.** This section was formerly codified at Indiana Code § 34–4–30–2.

**5.** Rule 8(E) became effective as of September 16, 1987. *Osborne* concerned an accident occurring on January 27, 1987. It is not clear whether Trial Rule 8(E) was in force at the time the complaint was filed, or whether the parties and the trial court were aware of it.

**6.** This section was formerly codified at Indiana Code § 34–1–1–1.

damages as will fairly compensate the Plaintiff for the harm sustained. Harm may be the loss of opportunity for cure, decreased short-term survival, or unnecessary physical pain and mental suffering. [Joann] Cummings is also entitled to be compensated for her loss of consortium....

The most striking aspect of this jury instruction is its inclusion of damages for "loss of chance" in the survival action. Plaintiff's counsel argued, over the objection of defense counsel, that the loss of chance itself was compensable, and the trial court allowed the instruction.

█ This Court recently had occasion to address the "loss of chance," or increased risk of harm doctrine, in *Alexander v. Scheid*, 726 N.E.2d 272 (Ind.2000). *Scheid* involved a plaintiff whose chances of long-term survival were allegedly substantially decreased by the defendant's negligence, but whose cancer was in remission at the time of suit. In *Scheid*, this Court reviewed the "loss of chance" doctrine as it has been applied in other jurisdictions and concluded that a plaintiff may recover in Indiana for the increased risk of harm caused by the defendant's act or omission in certain circumstances. We distinguished between Section 323, which was adopted in *Mayhue* to deal with claims for increased risk for an injury that has been incurred, and the situation presented in *Scheid*, where, although the risk had been increased, the plaintiff's ultimate injury was uncertain. In the face of that uncertainty, we held that the plaintiff may recover for her decreased chance of long-term survival, and is not required to wait until the ultimate injury comes to pass. *See id.* at 277–78.

The survival statute precludes recovery on both a wrongful death claim and a survival claim. *See* Ind.Code § 34-9-3-4 (1998) (the Survival of Cause of Action statute applies only if the person "receives personal injuries caused by the wrongful act or omission of another and ... subsequently dies from causes other than those

personal injuries"). Accordingly, a plaintiff cannot recover on both a wrongful death claim and a claim of an increased risk of harm caused by the same wrong. If the alleged result of the defendant's acts that increase the risk of harm is death itself, this converts the patient's claim into a wrongful death or related action, as in *Mayhue*. That is the circumstance here. It is possible, however, for a representative to bring a survival action on an increased risk of harm claim even where the plaintiff has died, if the death resulted from another cause. In the case before us, assuming the jury found that the defendant's negligence was not a substantial factor in bringing about Cummings' death, for example, because that risk was already 100%, the jury might still conclude that the delay in the diagnosis resulted in an accelerated death, or a decreased life expectancy. Whether that claim is of sufficient value to pursue is a decision for the plaintiff. A valuation of this injury as outlined in *Scheid* would then be appropriate. *See* 726 N.E.2d at 282–83. Thus, the instruction on the survival action, albeit unclear, did not contain an erroneous statement of law. On remand, if the theory remains in the case, the parties should attempt to clarify this instruction sufficiently for the jury.

## V. Alteration of Medical Records

After arguments from both parties concerning the admissibility of evidence that Kohne altered Cummings' medical records, the trial court determined that evidence of "spoliation" was admissible against Kohne on the issue of proximate causation. According to the trial court, because "Dr. Kohne was a medical doctor with knowledge of the stages of cancer and the increased risks to the patient when cancer is not timely diagnosed and treated. A reasonable inference is that Dr. Kohne was conscious that he increased the risk of harm to Mr. Cummings giving rise to falsification of his testimony and his records." The Court of Appeals concluded that the spoliation rule, as it exists in Indiana, does

not apply where the evidence has not been destroyed and no jury instruction is required to cure its unavailability. *See Cahoon,* 715 N.E.2d at 16. Under normal relevancy restrictions, the court further concluded, the trial court had abused its discretion in admitting this evidence because, once Kohne had conceded breach of duty, this evidence was no longer relevant. *See id.* at 16–17.

■ Spoliation consists of "[t]he intentional destruction, mutilation, alteration, or concealment of evidence, usually a document. If proved, spoliation may be used to establish that the evidence was unfavorable to the party responsible." *Black's Law Dictionary* 1409 (7th ed.1999). "In Indiana, the exclusive possession of facts or evidence by a party, coupled with the suppression of the facts or evidence by that party, may result in an inference that the production of the evidence would be against the interest of the party which suppresses it." *Porter v. Irvin's Interstate Brick & Block Co.,* 691 N.E.2d 1363, 1364–65 (Ind.Ct.App.1998); *see also Great Am. Tea Co. v. Van Buren,* 218 Ind. 462, 467, 33 N.E.2d 580, 581 (1941) ("While this rule will not be carried to the extent of relieving a party of the burden of proving the case, it may be considered as a circumstance in drawing reasonable inferences from the facts established."). Spoliation evidence arises more commonly in the criminal context, but is also relevant in civil cases. 12 Robert Lowell Miller, Jr., *Indiana Practice* § 401.112 (2d ed.1995). Spoliation evidence is ordinarily admissible not as to a single issue only, but rather bears on the strength of the case in general and the defendant's consciousness of guilt. *See* 2 John Henry Wigmore, *Evidence in Trials at Common Law* § 278 (1979), *revised by* James H. Chadbourn.

■ The primary alteration alleged here is the addition of the words "Cline scope" to Cummings' December 1991 x-ray report. Kohne originally maintained that he had recommended to Cummings that he have an endoscopy, but that Cummings had not done so. Cline was a doctor to whom Kohne would have referred Cummings had Kohne recommended an endoscopy. The endoscopy, in turn, would have likely revealed esophageal cancer. Copies of medical records sent to plaintiff's counsel before litigation was commenced did not bear this notation.[7]

Although it is true that the few Indiana cases on point have involved situations in which evidence has been destroyed or is made unavailable, *see, e.g., Porter,* 691 N.E.2d at 1363, we see no reason to restrict the application of this rule to that context. Spoliation, according to its dictionary definition, includes the alteration of documentary evidence as well as its destruction. Thus, we hold that the evidence of the addition of "Cline scope" to Cummings' x-ray report qualifies under the spoliation rule in Indiana.

The trial court did not abuse its discretion in admitting the evidence as probative of Kohne's belief on the issue of proximate causation. As we have already noted, spoliation evidence is admissible to show the defendant's consciousness of guilt and the strength of his or her case generally. Here, Kohne conceded that he breached his duty to Cummings. By trial, the only remaining issue for the jury to resolve was causation. Therefore, the trial court concluded that this evidence was admissible as to the only remaining issue—proximate causation.

The Court of Appeals concluded that instructing the jury regarding the defendant's perspective on causation had the effect of converting Kohne into an expert

---

7. There were two other notations on Cummings' records not present on the initial records sent to plaintiff's counsel: "Axid samples" and "Gene Reiss." Kohne claimed that he had prescribed Axid samples for Cum-mings. Gene Reiss was a name of an insurance agent Kohne knew; Kohne claimed he had made this notation after finding out that litigation was pending against him.

witness. The instruction read: "[I]f you find that there are unexplained or intentional alterations of medical records by Dr. Kohne, you can presume that the evidence would have been unfavorable to Dr. Kohne on the issue of proximate causation." Allowing evidence to be presented as to Kohne's perspective regarding proximate cause was proper to demonstrate that Kohne himself believed his inaction to have been significant in the treatment of Cummings. A jury could easily find this evidence significant as to both duty and proximate cause, necessary elements of a tort claim. Thus, it was not error to instruct the jury that they could infer from the alteration of Cummings' records that Kohne believed he had caused harm to Cummings.[8]

## VI. Prejudgment Interest

The trial court awarded prejudgment interest in the amount of $18,443.84 against Cahoon, but not against the Kohne estate, reasoning that the then $100,000 cap on medical malpractice liability of a health care provider limited Kohne's liability on the $194,000 jury verdict against his estate, but that prejudgment interest could be awarded on the $75,000 verdict against Cahoon. The Court of Appeals took the view that the offers of settlement Joann made did not qualify under the prejudgment statute, so prejudgment interest could not be awarded against either defendant. This ruling rendered moot the question whether the health care provider's liability applied to prejudgment interest.

The threshold question is whether prejudgment interest is awardable at all under the prejudgment interest statute. That statute permits the trial court to award prejudgment interest, but includes several disqualifying circumstances. Because the defendants made no offer to settle, the only provision relevant here is found in Indiana Code § 34-51-4-6, which requires that the plaintiff have made a written offer "to the party or parties against whom the claim is filed" to settle for an amount that turns out to be more than seventy-five percent of the judgment ultimately awarded.[9] Subsection 6(2) of that section provides that the terms of the offer must "provide for payment of the settlement offer within sixty (60) days after the offer is accepted."

In July 1994, and a few times thereafter, Joann's counsel sent to counsel for the common insurer of both Cahoon and Kohne a letter that stated Joann was "offering to settle this claim now for $75,-001." The Court of Appeals held that the offer did not meet the requirement of subsection 6(2) because the offer did not provide that the defendants must pay the $75,001 within sixty days. At the time the offer was made, in order for a plaintiff to access the Patient's Compensation Fund and thereby recover more than the $100,000 available from the health care provider, the Medical Malpractice Act required a current settlement payment of at least $75,000 or a structured settlement

---

8. Kohne also argues that, if the admission of evidence of the alteration of Cummings' medical records is sustained, the trial court was required to take judicial notice of its order granting summary judgment in favor of Kohne on Joann's punitive damages claim. The punitive damages claim was based on the alteration of Cummings' medical records. Kohne observes that Indiana Evidence Rule 201(d) provides that a court must "take judicial notice if requested by a party and supplied with the necessary information." Records in the same case, including the court's own rulings, fall within the purview of judicial notice. See Miller, *Indiana Practice* § 201.105, at 150, 150 n.1. That is not the

only consideration, however. Judicial notice presumes relevance and the balancing required by Rule 403. The trial court was well within its discretion in concluding that instructing on its ruling on a motion for partial summary judgment as to a claim for punitive damages would be more confusing than enlightening to the jury.

9. This is hopefully a more easily understood description of the statute's mathematically equivalent disqualification of a plaintiff whose "offer exceeds one and one-third (1 1/3) of the amount of the judgment awarded." Ind.Code § 34-51-4-6 (1998).

meeting the requirements of the statute. *See* Ind.Code § 34–18–14–4 (1998) (version effective until July 1, 1999).[10] In that context, we think an offer to "settle this claim now for $75,001" clearly conveys a demand for a lump sum payable forthwith, and that there was no doubt in the defendants' insurer's mind that the case could be disposed of as to both doctors for that amount immediately. The requirement of sixty days in the cited provision parallels the same language found in section 5(2) and 5(3) of the Prejudgment Interest Act, which permits a defendant to avoid the Act by making an offer that turns out to be at least two-thirds of the ultimate judgment. *See* Ind.Code § 34–51–4–5 (1998). It seems obvious that this language is intended to deal with the point that an offer to settle on some structured basis by periodic or long distant lump payments is worth less in present dollars. The whole point of the statute is to address the cost of delay in payment. Accordingly, an offer to settle "now" is an offer to settle by payment within sixty days. The delay is solely for the benefit of the defendants, and the defendants had the power to accept Joann's offer immediately.

Cahoon argues that the offer was unclear as to how much was attributable to which defendant. That may be correct, but the statute requires only that the offer be made to the "party or parties" who have been sued. Either defendant, by ponying up the full $75,000 could have terminated the case as to himself and the other doctor. Each ended up with a judgment that was independently sufficient to trigger prejudgment interest even if the other had been found not liable. Under those circumstances, there is no reason why both should not compensate the plaintiff for the use of her funds over the time it took to resolve this dispute for more than the plaintiff would have accepted in 1994.

There remains the question of the interplay between the Prejudgment Interest Act and the Medical Malpractice Act. The legislature has spoken on that point. Section 2 of the Prejudgment Interest Act provides that the Act "does not apply to a claim against the patient's compensation fund." Ind.Code § 34–51–4–2 (1998). As we noted in *Poehlman v. Feferman,* 717 N.E.2d 578, 582 (Ind.1999), there is no comparable provision immunizing health care providers generally from prejudgment interest. In *Emergency Physicians v. Pettit,* 718 N.E.2d 753, 755 (Ind.1999), this Court held that "a qualified health care provider is subject to the provisions of the pre-judgment interest statute." Thus, the trial court correctly concluded that prejudgment interest was awardable as to Cahoon, whose judgment was under the cap, even after adding the interest.

Kohne's estate presents the question whether the cap operates to limit the health care provider's exposure to all items, including prejudgment interest. This was the precise issue addressed in *Pettit,* where we held that "a qualified health care provider is responsible for the payment of the collateral litigation expense of pre-judgment interest" even if that brings the provider's total liability over the cap. 718 N.E.2d at 757. However, each judgment debtor is responsible only for the interest "attributable to [the provider's] individual liability," i.e., interest on $100,000. *Id.*

Prejudgment interest addresses the same problem as postjudgment interest. If a defendant has the option to terminate the dispute at a known dollar cost, and chooses not to do so, that defendant and not the plaintiff should bear the cost of the time value of money in the intervening period if the ultimate result is within the parameters set by the legislature. Accordingly, we have held that prejudgment interest is recoverable from a health care

---

**10.** The statute is the same today except the dollar amount was changed to $187,000 effec-  tive July 1, 1999.

provider on the amount of the judgment against that provider. Because that judgment amount is subject to the statutory cap, and prejudgment interest is not available from the fund, this will not provide the plaintiff with full relief, but it is the balance we conclude the legislature has struck between the competing interests of fairness and encouragement to settle reflected in the prejudgment interest statute and the Medical Malpractice Act's concern for health care cost containment.

## Conclusion

We reverse the judgment of the trial court and remand for a new trial.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.