

IN THE

# Court of Appeals of Indiana



FILED

Mar 24 2025, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Caryl Rosen,

*Appellant-Plaintiff*

v.

Community Healthcare System d/b/a Community Hospital,

*Appellee-Defendant*

---

March 24, 2025

Court of Appeals Case No.
24A-CT-1463

Appeal from the Lake Superior Court

The Honorable Rehana R. Adat-Lopez, Judge

Trial Court Cause No.
45D10-2102-CT-122

---

**Opinion by Judge Bailey**
Judges Vaidik and DeBoer concur.

**Bailey, Judge.**

# Case Summary

[1] Caryl Rosen appeals a jury's verdict in favor of Community Healthcare System d/b/a Community Hospital ("Hospital") on Rosen's negligence claim. We affirm in part, reverse in part, and remand with instructions.

# Issues

[2] Rosen raises three issues, which we consolidate and restate as the following two issues:

1. Whether the trial court abused its discretion when it found that Hospital did not engage in spoliation of evidence and refused a spoliation jury instruction.

2. Whether the trial court abused its discretion when it precluded Rosen from eliciting testimony about or otherwise introducing evidence regarding the adequacy of Hospital's investigation.

# Facts and Procedural History

[3] On October 18, 2019, Rosen arrived at Hospital to pick up her husband. As Rosen was walking through Hospital's lobby to exit, she fell at Hospital's main entrance and sustained injuries. Rosen's husband was not with her at the time of the fall. No Hospital employees witnessed the fall.

[4] A member of Hospital's housekeeping staff notified Officer Angela Smith, the security guard on duty at the security desk at the time, of the fall. Officer Smith

then approached Rosen, who was lying face down on a floor mat at the main entrance. Rosen informed Smith that she had tripped over the mat. Smith then looked at the mat and observed that it was "flat" and not "disheveled or flipped up in any way." Tr. v. III at 209. Smith offered to take Rosen to the emergency room, but Rosen declined that offer. Rosen left Hospital, and Smith then prepared a report documenting the incident.

[5] Hospital had "three cameras located in the main entrance lobby area" at the time of Rosen's fall. Appellant's App. v. III at 2. One camera was "in the main lobby itself[,] pointing towards the visitors' desk," another was "near the security guard station[,] pointing towards the main entrance," and the third was "in the gift shop." *Id*. at 9. Hospital's "camera system [is] designed … [to] eliminate[]" video recordings that have not been preserved after "roughly" forty-five days. Tr. v. III at 84-85. Thus, "if evidence isn't specifically saved for whatever reason, it will get automatically recorded over at some point … 45 to 60 days down the road[.]" *Id*. at 85.

[6] On October 24, 2019, Rosen's lawyer sent a letter of representation to Hospital which stated, in part:

> It has been brought to our attention that there is a video and/or photos which show my client being injured. At this time, we are requesting that you preserve said video, as well as the photographs, if any exist. We are also requesting copies of any and all incident reports which may have been completed by the hospital.

Appellant's App. v. II at 22. On November 1, 2019, Hospital sent Rosen's counsel a copy of Smith's incident report and a "10 to 12 seconds" long video that had recorded a view of Rosen leaving at Hospital's main entrance on the day in question (hereinafter referred to as "Preserved Video"). Tr. v. III at 83. Hospital's cover letter stated, "If you need anything else, please let me know." Appellant's App. v. II at 136.

[7] On February 1, 2021, Rosen filed her complaint in which she alleged that Hospital was "negligent and at fault in maintaining, operating, inspecting, and warning those on the premises so as to create an unsafe condition for the Plaintiff and others similarly situated, and was otherwise negligent" and sought damages therefrom. *Id*. at 23. On February 19, 2021, Rosen served Hospital with discovery requests, including a Request for Production of Documents which sought "copies of any and all photographs or videotapes (including surveillance videotapes) taken on the date of and in the vicinity of the Plaintiff's fall." *Id*. at 26. Over one year later, on February 25, 2022, Hospital provided the following response to Rosen's request for copies of videotapes: "See surveillance videotape already produced to plaintiff." *Id*. at 29.

[8] Following a subsequent Trial Rule 30(B)(6) deposition of Hospital and an errata sheet, Rosen first learned that two other cameras besides the one that recorded the Preserved Video existed and were recording in Hospital's main lobby at the time of Rosen's fall. On September 11, 2023, Rosen filed a "Motion to Bar Testimony and for Additional Sanctions for Spoliation of Evidence or, in the

Alternative, For Discovery Sanctions." *Id.* at 113. On September 20, 2023, Rosen filed a second such motion.

[9] On October 5, Hospital filed a response, to which it attached an affidavit of Timothy Panek, a security supervisor employed by Hospital. Panek's affidavit stated the following. Pursuant to his "custom and practice[,]" after receiving the incident report on October 19, 2019, Panek viewed the video recordings taken by each of the three cameras in or near Hospital's lobby at the time of Rosen's fall. Appellant's App. v. III at 8. Panek then "determined that only the video from the camera near the security desk facing towards the main entrance doors captured [Rosen's] fall." *Id.* at 9. In the view from that camera recording (i.e., the Preserved Video), the main entrance is about "75 feet or more" away from the camera. Tr. v. III at 82. Panek determined that "[t]he video recorded by the other two cameras did not show [Rosen's] fall or any part thereof." Appellant's App. v. III at 9. Therefore, Panek preserved the video from the camera near the security desk "from the point at which Ms. Rosen entered the screen" and "stopped preserving video at the point at which she stood up and walked out of the hospital." *Id.* Neither Panek nor any other Hospital employee preserved any other video recordings from each of the three cameras that were recording at or near Hospital's lobby at the time of Rosen's fall.

[10] On December 7, 2023, the trial court conducted a hearing on Rosen's motions, at which it heard argument of counsel. Rosen argued that "Defendant discarded relevant evidence that would either prove or disprove that Defendant knew, or by the exercise of reasonable care would have discovered, the condition of the

rug." Supp. Tr. at 6. Rosen noted that, "[w]ithout the video evidence, Plaintiff is unable to show the jury just how long the defect in the rug was present." *Id.* at 11. Rosen also noted that Hospital neither disclosed Panek as a potential witness nor provided his affidavit until after the discovery deadline, and moved to exclude Panek's affidavit and possible testimony at the trial.

[11] On January 26, 2024, the trial court issued its order on Rosen's pending motions. The court denied Rosen's motion for sanctions due to spoliation, holding, "The Court finds that there has been no spoliation of evidence by the Defendant…. The Defendant preserved video evidence of the incident at issue in this matter." Appellant's App. v. III at 15. However, the court granted Rosen's motion to exclude evidence that Hospital had not provided before the end of discovery, including Panek's affidavit.

[12] On April 11, 2024, Hospital filed a motion in limine in which it sought, among other things, an order prohibiting Rosen from eliciting evidence about and/or arguing that Hospital spoliated any evidence and that Hospital conducted an inadequate investigation of Rosen's fall. The trial court granted those motions. However, regarding the investigation of Rosen's fall, the court stated that "Plaintiff's counsel can question the Defendant's witnesses regarding the Defendant's investigation as it is relevant to Plaintiff's claims of negligence." *Id.* at 30.

[13] The trial court held a jury trial on May 20-21, 2024. Rosen made an offer of proof regarding the issue of spoliation and argued that her ability to prove her

case was severely limited due to Hospital's spoliation of relevant evidence, i.e., additional video recordings of Hospital's main entrance around the time of Rosen's fall. The court reiterated its previous ruling that there was no spoliation and ordered that Rosen was prohibited from introducing any evidence related to spoliation, including "mention[ing]" or asking questions about any videos other than the Preserved Video. Tr. v. III at 78. Rosen was permitted to question witnesses about the steps Hospital took to investigate her fall but was prohibited from asking questions about the adequacy of the investigation, such as a question about whether Hospital conducted a "formal investigation." *Id*. at 99.

[14] On the last day of trial, Rosen proposed the following jury instruction:

> If a party fails to produce a document or physical evidence under the party's exclusive control, you may conclude that the documents or evidence would have been unfavorable to the party's case.

Appellee's App. v. II at 141. Hospital objected to the proposed instruction, and the trial court refused the instruction. The jury returned a verdict in favor of Hospital. This appeal ensued.

## Discussion and Decision

### Standard of Review

[15] Rosen challenges the trial court's ruling that Hospital did not engage in spoliation of evidence and its related exclusion of evidence regarding spoliation.

Trial courts have broad discretion regarding both discovery matters, *e.g.*, *In re Paternity of A.J.*, 146 N.E.3d 1075, 1083 (Ind. Ct. App. 2020), *trans. denied*, and decisions whether to admit or exclude evidence, *e.g., Matter of K.R.*, 154 N.E.3d 818, 820 (Ind. 2020). We review such decisions for an abuse of that discretion. "An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Id.* (internal quotation marks and citation omitted). To the extent the court's ruling depends on a legal question, our review is de novo. *See, e.g.*, *Tunstall v. Manning*, 124 N.E.3d 1193, 1196 (Ind. 2019).

[16] Rosen also challenges the trial court's refusal to give her proposed jury instruction regarding spoliation of evidence. We also review those challenges for an abuse of discretion. *Phillips v. State*, 22 N.E.3d 749, 761 (Ind. Ct. App. 2014), *trans. denied*.

> In reviewing a trial court's decision to give [or refuse] a tendered jury instruction, we consider (1) whether the instruction correctly states the law, (2) is supported by the evidence in the record, and (3) is not covered in substance by other instructions…. To constitute an abuse of discretion, the instructions given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury.

*Id.* (quotation and citation omitted).

## Spoliation

[17] The trial court's decisions not to impose discovery sanctions, not to allow the introduction of evidence related to the issue of spoliation (such as the existence

of other videotapes), and not to instruct the jury on spoliation all arise from the court's conclusion that Hospital did not engage in intentional or negligent spoliation of evidence.

"Spoliation is a particular discovery abuse that involves the intentional or negligent destruction, mutilation, alteration, or concealment of physical evidence." *A.J.*, 146 N.E.3d at 1083. "'[A]nyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence [in their possession] that might be useful to an adversary.'" *Miller v. Fed. Exp. Corp.*, 6 N.E.3d 1006, 1013 (Ind. Ct. App. 2014) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)), *trans denied*. Such a party "is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Id*. (quoting *Zubulake*, 220 F.R.D. at 217). This duty may exist prior to the commencement of a lawsuit. *Whetstine v. Menard, Inc.*, 161 N.E.3d 1274, 1280 (Ind. Ct. App. 2020), *trans. denied*.

A party raising a claim of spoliation

> must prove that (1) there was a duty to preserve the evidence, and (2) the alleged spoliator either negligently or intentionally destroyed, mutilated, altered, or concealed the evidence. [*N. Ind. Pub. Serv. Co. v. Aqua Env't Container Corp.*, 102 N.E.3d 290, 301 (Ind. Ct. App. 2018)]. "The duty to preserve evidence occurs when a first-party claimant 'knew, or at the very least, should have known, that litigation was possible, if not probable.'" *Golden Corral Corp. v. Lenart*, 127 N.E.3d 1205, 1217 (Ind. Ct. App. 2019)

(quoting *Aqua Env't Container Corp.*, 102 N.E.3d at 301), *trans. denied*. "Our Supreme Court has recognized that '[t]he intentional or negligent destruction or spoliation of evidence cannot be condoned and threatens the very integrity of our judicial system.'" *Aqua Env't Container Corp.*, 102 N.E.3d at 302 (quoting *Gribben v. Wal-Mart Stores, Inc.*, 824 N.E.2d 349, 354 (Ind. 2005)).

*Synergy Healthcare Res. LLC v. Telamon Corp.*, 190 N.E.3d 964, 968 (Ind. Ct. App. 2022).

[20] The rule against spoliation is an acknowledgment that

> [t]here can be no truth, fairness, or justice in a civil action where relevant evidence has been destroyed before trial. Destroying evidence can destroy fairness and justice, for it increases the risk of an erroneous decision on the merits of the underlying cause of action. Destroying evidence can also increase the costs of litigation as parties attempt to reconstruct the destroyed evidence or to develop other evidence, which may be less accessible, less persuasive, or both.

*Gribben*, 824 N.E.2d at 354 (quotations and citations omitted).

[21] Thus, "[i]n Indiana, the exclusive possession of facts or evidence by a party, coupled with the suppression of the facts or evidence by that party, may result in an inference that the production of the evidence would be against the interest of the party which suppresses it," *Golden Corral Corp.*, 127 N.E.3d at 1217 (quotation and citation omitted), and the jury may be so instructed, *see, e.g.*, *Cahoon v. Cummings*, 734 N.E.2d 535, 545 (Ind. 2000). And, while the rule allowing such an inference "will not be carried to the extent of relieving a party

of the burden of proving the case, it may be considered as a circumstance in drawing reasonable inferences from the facts established." *Id.* (quotation and citation omitted).

[22] Here, it is undisputed that Hospital had a duty to preserve evidence. And that duty arose at the time when Hospital knew that litigation over the fall was possible. Hospital had that knowledge as early as the day after the fall, as shown by the fact that Panek reviewed all three video recordings that day and preserved a portion thereof. The dispute relates to whether Hospital fulfilled that duty by preserving the video evidence in Preserved Video or failed in its duty by intentionally or negligently failing to preserve the other video recordings in the vicinity of the lobby at the time of Rosen's fall.

[23] The Preserved Video is a ten- to twelve-second recording from approximately seventy-five feet away from the entrance where Rosen allegedly tripped over a floor mat, and that floor mat is only partially visible from the angle and distance at which the camera recorded the Preserved Video. The portion of the mat over which Rosen allegedly tripped is not visible at all on Preserved Video because it is "blocked" by a "pix[e]lated" object that may be a wheelchair. Tr. v. IV at 19-20. However, had Hospital retained video footage from that camera before the wheelchair had been moved into its position, such footage may have shown the state of the mat, which would have been relevant to Rosen's claims.

[24] There was also a camera above the main entrance of Hospital and facing into the lobby, which was recording at the time. Hospital failed to preserve that

recording. While Panek swore in his affidavit[1] that the video recording from the latter camera "did not show the fall or any part thereof[,]" Hospital did not provide any evidence from Panek or any other source indicating that the *state of the mat* over which Rosen allegedly tripped was not visible in that recording before or after the fall. Appellant's App. v. III at 9. And, again, the state of the floor mat before Rosen's fall is highly relevant to her claim that Hospital was negligent "in maintaining, operating, inspecting, and warning those on the premises" of the unsafe condition of the floor mat.[2] Appellant's App. v. II at 23.

[25] Hospital failed to preserve evidence that it knew, or reasonably should have known, "is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Miller*, 6 N.E.3d at 1013. Whether intentional or negligent, Hospital's failure to preserve additional footage from the camera facing the main entrance and the video recordings from other cameras in the area of the lobby was spoliation. The trial

---

[1] Panek's affidavit was considered by the trial court when ruling on Rosen's motion for sanctions due to spoliation but was not admitted into evidence at the jury trial.

[2] Hospital contends that it was only required to preserve evidence that Rosen had requested in her letter dated October 24, 2019, in which she requested that Hospital preserve "video and/or photos which show [Rosen] being injured." Appellant's App. v. II at 22. However, Hospital cites no legal authority in support of that contention, and we find none. Rather, the caselaw clearly states there is a duty to preserve all relevant evidence at the time when a defendant knew or should have known that litigation was possible, regardless of any request for preservation. *See, e.g.*, *Miller*, 6 N.E.3d at 1013.

court's contrary conclusion is against the logic and effect of the facts and circumstances before it.[3]

[26]    Moreover, the spoliation, whether negligent or intentional, caused extreme prejudice to Rosen's case. Trial courts have broad discretion to redress spoliation of evidence. *Aqua Env't Container Corp.*, 102 N.E.3d at 302. However,

> [w]hen deciding whether to sanction a party for the spoliation of evidence, courts [must] consider two primary factors: (1) the degree of culpability of the party who lost or destroyed the evidence; and (2) the degree of actual prejudice to the other party. Culpability can range along a continuum, from destruction intended to make evidence unavailable in litigation to inadvertent loss of information for reasons unrelated to the litigation. Prejudice likewise can range along a continuum, from an inability to prove claims or defenses to little or no impact on the presentation of proof. [I]f there is an inadvertent loss of evidence but severe prejudice to the opposing party, that [ ] will influence the appropriate response, recognizing that sanctions (as opposed to other remedial steps) require some degree of culpability.

*Id.* at 303 (quotations and citations omitted).

[27]    Here, Rosen could not prove her claim that Hospital negligently maintained the floor mat over which she allegedly tripped with only the Preserved Video,

---

[3] The trial court also excluded evidence even referring to the existence of the other videos of the lobby. These rulings appear to be based on the court's erroneous finding that there was no spoliation and, therefore, the existence of other videos was not relevant. To the extent the erroneous finding on spoliation was the basis for excluding such evidence, those exclusions were also an abuse of the court's discretion.

because that video did not show the state of the floor mat. However, earlier footage from that camera and/or video recordings from the other lobby camera may have shown the state of the floor mat before Rosen's fall. No one other than Panek, an employee of Hospital who was the only person who reviewed the other videos, can know what the missing footage showed. Because of the spoliation, Rosen cannot possibly prove that the destroyed video definitely would have shown the state of the floor mat,[4] but that is not her burden of proof; rather, the spoliated evidence must only be "relevant evidence that might be useful to an adversary" in potential litigation in order to trigger the duty to preserve it. *See, e.g.*, *Miller*, 6 N.E.3d at 1013. And the relevant showing was made by Hospital's admission that the placement of a wheelchair blocked the view of the mat in the Preserved Video and that the erased video from the camera over the entrance door contained a view of the main lobby before, during, and after Rosen's fall. Such evidence would have been highly relevant to Rosen's negligence claim. Thus, even if there was an "inadvertent loss of evidence" by Hospital, there was "severe prejudice to the opposing party[,]" i.e., Rosen. *Aqua Env't Container Corp.*, 102 N.E.3d at 303.

[28] As sanctions for Hospital's spoliation, Rosen requested a default judgment or, in the alternative: an exclusion of evidence from Hospital that "the defect in the

---

[4] Rosen asserts that the video recording from the camera above the main entrance "would have clearly shown the fall, shown the defect in the mat, and shown how long the defect was present." Appellant's Br. at 24. However, as that video recording was not preserved and, therefore, not viewed by Rosen, she cannot possibly know what it actually showed; that is the point of the rule against spoliation.

rug was not present before the fall and during the fall," Appellant's App. v. II at 125; an exclusion of evidence from Hospital regarding "how long the defect in the rug was present or not present," *id*. at 126; an order that it be taken as established fact that "a defect in the rug was present long enough that [Hospital] knew or should have known of its presence," *id*.; a default judgment for Rosen on any of Hospital's claims; that "the jury be instructed to infer that the evidence contained in the spoliated videos is unfavorable to [Hospital]," *id*.; and an award of Rosen's attorney fees and costs. And, at trial, Rosen proposed the following jury instruction:

> If a party fails to produce a document or physical evidence under the party's exclusive control, you may conclude that the documents or evidence would have been unfavorable to the party's case.

Appellee's App. v. II at 141.

[29] That proposed jury instruction was a correct statement of the law. *See, e.g.*, *Golden Corral Corp.*, 127 N.E.3d at 1217-18. In addition, it was supported by the evidence in the record and not covered in substance by other instructions. *See Phillips*, 22 N.E.3d at 761. Given that there was spoliation, the trial court, at a minimum, should have given Rosen's proposed jury instruction. The trial court's failure to do so was an abuse of discretion and reversible error. At a new trial on remand, the trial court should give the above spoliation instruction and grant any other sanction that it determines is an appropriate remedy for Hospital's spoliation.

## Evidence Regarding Hospital's Investigation

[30]     Rosen also contends that the trial court abused its discretion when it precluded her from introducing evidence related to the adequacy of Hospital's investigation of Rosen's fall.[5] Both parties agree with the trial court's ruling that Hospital had no duty to investigate, and Rosen has never raised an independent claim of negligent investigation. What Rosen challenges is the trial court's ruling that she could not elicit evidence regarding the *adequacy* of Hospital's investigation because it was not relevant to Rosen's negligence claim and raising that issue could mislead the jury into believing Hospital had a duty to investigate.

[31]     Our Rules of Evidence provide that:

> [e]vidence is relevant if:
>
> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
>
> (b) the fact is of consequence in determining the action.

Ind. Evid. Rule 401. Relevant evidence is admissible, and "[i]rrelevant evidence is not admissible." Evid. R. 402. Moreover, even relevant evidence may be

---

[5] Although we hold that the erroneous ruling on spoliation requires that this case be reversed and remanded for a new trial, we also address Rosen's challenge to the preclusion of questioning regarding the adequacy of the investigation, as the issue is likely to arise again in the new trial. To the extent Rosen challenges the ruling that she was precluded from eliciting evidence about the "failure to preserve other videos," we have ruled on that issue in her favor, above. Appellant's Br. at 31.

excluded if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Evid. R. 403.

[32] Here, the court clearly allowed Rosen to present evidence—and question Hospital—about the steps it took after Rosen's fall to the extent that evidence was relevant to her negligence claims. In granting Hospital's motion in limine, the court prohibited Rosen from eliciting evidence about and/or arguing that Hospital had conducted an *inadequate* investigation of Rosen's fall. However, the court specifically clarified that "Plaintiff's counsel can question the Defendant's witnesses regarding the Defendant's investigation as it is relevant to Plaintiff's claims of negligence." Appellant's App. v. III at 30. Thus, Rosen was permitted to—and did—question Hospital's witnesses about what steps they took before, during, and after the fall, including what Hospital did in its post-fall investigation.

[33] Where the trial court drew the line was when Rosen sought to elicit testimony about why Hospital failed to identify and/or speak with particular people after the fall. The court did not abuse its discretion in ruling that such testimony would be relevant to the adequacy of the investigation *after* the fall but would have little relevance to whether Hospital had notice of a defect *before* the fall; and only the latter is relevant to Rosen's negligence claim based on an alleged defect in the floor mat. Moreover, the court acted within its discretion when it held that questions about the adequacy of the investigation could confuse and mislead the jury into believing that Hospital had a duty to investigate. Thus,

even if the excluded evidence had some relevance, the court did not abuse its discretion when it determined that relevance was substantially outweighed by the danger of confusing and misleading the jury. *See* Evid. R. 403.

[34] Rosen asserts that Hospital "opened the door" to whether its investigation was adequate. Appellant's Br. at 31. Even otherwise inadmissible evidence may be raised when the opposing party "opens the door" to such evidence. *E.g.*, *Jackson v. State*, 728 N.E.2d 147, 152 (Ind. 2000). "Opening the door refers to the principle that where one party introduces evidence of a particular fact, the opposing party is entitled to introduce evidence in explanation or rebuttal thereof, even though the rebuttal evidence otherwise would have been inadmissible." *Sampson v. State*, 38 N.E.3d 985, 992 n.4 (Ind. 2015).

[35] Rosen contends that Hospital opened the door to evidence of the adequacy of its investigation by eliciting evidence that it acted in conformity with its habit or practice on the day of the fall "or after that day." Appellant's Br. at 31. However, Rosen is mistaken as to the latter assertion; while Hospital elicited evidence indicating that it acted appropriately by following its practices for maintaining its premises, it never elicited evidence that it acted appropriately in its post-fall investigation. Arguing that Rosen did not prove Hospital was negligent for a defect in the floor mat is not the same as arguing that Hospital did an adequate investigation after the fall. Hospital did not open the door to evidence regarding the adequacy of its investigation.

## Conclusion

The trial court did not abuse its discretion when it excluded evidence of the adequacy of Hospital's post-fall investigation. However, the court erred when it ruled that Hospital did not engage in spoliation of evidence based on its failure to preserve all of its video recordings of the main entrance and the Hospital's lobby at the time of Rosen's fall. The court also erred by refusing to give the proffered jury instruction regarding spoliation. Therefore, we reverse and remand for a new trial at which evidence regarding spoliation will be permitted, the jury instruction regarding spoliation will be given, and the trial court will determine what additional sanctions, if any, are appropriate due to Hospital's spoliation of evidence.

Affirmed in part, reversed in part, and remanded with instructions.

Vaidik, J., and DeBoer, J., concur.

ATTORNEYS FOR APPELLANT

Angela M. Jones
The Law Office of Angela M. Jones, LLC
St. John, Indiana

Steve J. Sersic
Smith Sersic, LLC
Munster, Indiana

ATTORNEYS FOR APPELLEE

Gregory A. Crisman
Zachary R. Peifer
Eichhorn & Eichhorn, LLP
Hammond, Indiana