**James H. SMITH, Appellant (Plaintiff Below),**

v.

**Wilbert WASHINGTON, M.D., Appellee (Defendant Below).**

No. 49S04–0009–CV–512.

Supreme Court of Indiana.

Sept. 1, 2000.

Thomas C. Doehrman, Courtney E. McGovern, Indianapolis, Indiana, Attorneys for Appellant.

Todd J. Kaiser, Peter H. Pogue, Indianapolis, Indiana, Attorneys for Appellee.

## ON PETITION TO TRANSFER

BOEHM, Justice.

This appeal presents the issue of the measure of damages for an act of negligence that increased the risk of an injury that was at least equally likely to occur in the absence of negligence. We grant transfer and hold, as we did in *Cahoon v. Cummings*, 734 N.E.2d 535 (Ind.2000), that damages under these circumstances are to be in proportion to the increased risk attributable to the defendant's negligence. We affirm the trial court.

### Factual and Procedural Background

James Smith was involved in a car accident in May of 1990, and soon sought the care of an ophthalmologist for his right eye, which was red, itchy, runny, and painful. Dr. Wilbert Washington was recommended to Smith by his family physician. Washington treated Smith from July 10, 1990, until at least June 13, 1992. Washington diagnosed Smith as suffering from glaucoma. Washington prescribed eye drops and performed two laser surgeries in an effort to reduce the intraocular pressure to Smith's optic nerve. He also prescribed Motrin to relieve Smith's pain. By the end of this treatment, however, Smith "had no light perception in his right eye and he would never regain any useful vision in that eye."

Smith subsequently changed jobs and switched health insurance plans. Through his new primary physician he was referred to another ophthalmologist, who noted that Smith was still suffering from increased intraocular pressure. Not long after consulting with this ophthalmologist, Smith agreed to the removal of his right eye and was fitted with a prosthetic eye.

Pursuant to the Medical Malpractice Act, Smith submitted a proposed complaint on October 14, 1993. The Medical Review Panel issued an opinion on March 20, 1995, unanimously concluding that Washington had breached the standard of care in treating Smith, but that it could not be determined whether Washington's breach was or was a not a factor in Smith's injuries. Smith subsequently filed suit in Marion Superior Court, alleging that Washington had breached the standard of care, and that "as a direct and proximate result," Smith had permanently lost vision in his right eye, suffered undue pain and discomfort, disfigurement, and lost earnings, and had incurred and would continue to incur medical expenses related to treatment of the eye.

Washington belatedly asserted his right to a jury trial, which the trial court denied. A bench trial was held on October 15 and 16, 1997, December 1, 1997, and April 13, 1998. At trial, Dr. Robert Boeglin, a Panel member, testified that Washington had breached the standard of care by failing (1) to maintain adequate record-keeping; (2) to establish, or take appropriate steps toward establishing, a specific diagnosis of Smith's type of glaucoma; (3) to monitor the condition of Smith's optic nerve with appropriate testing; (4) to gain control of Smith's glaucoma within a reasonable time frame, or, alternatively, refer Smith to another ophthalmologist; and (5) either to document advising Smith to have further surgery or to advise Smith of the risks and benefits of surgery. Washington argued that he had not breached the standard of care and that he had caused no injuries to Smith. He also maintained that Smith was contributorily negligent in failing to take the recommended medications and refusing to undergo further surgery. Fi-

nally, he contended that his last contact with Smith was September 28, 1991, so Smith's October 29, 1993 proposed complaint was untimely.

The trial court issued findings of fact and conclusions of law on July 2, 1998, substantially adopting the testimony of Boeglin and concluding that Washington's negligence was a substantial factor in Mr. Smith's damages. The trial court also determined that Smith was not contributorily negligent, and that his complaint was timely. The trial court then determined that Smith's damages were $364,037.84, but, drawing on another doctor's testimony, reduced this figure by fifty percent, which was found to be the probability that Smith would have lost his vision even in the absence of Washington's malpractice.

Both Smith and Washington appealed. Smith contested the amount of the damages award, arguing that because the trial court had determined that he had a fifty percent chance of maintaining useful vision and avoiding removal, he had proved proximate causation and should have been awarded full damages. Washington argued that the trial court had erred in finding Smith's claim timely and determining that Smith was not contributorily negligent. Washington also appealed the trial court's denial of his request for a jury trial. The Court of Appeals, citing *Cahoon v. Cummings*, 715 N.E.2d 1 (Ind.Ct.App. 1999), reversed the trial court on the issue of damages and remanded with instructions to award damages in the full amount of $364,037.84. *See Smith v. Washington*, 716 N.E.2d 607, 613–14 (Ind.Ct.App.1999).

On petition to transfer to this Court, Washington again raises the issues of contributory negligence, his denial of a jury trial, and the award of damages. Smith counters that, even if this Court determines that his damages award must be reduced to reflect the percentage fault of Washington in bringing about his injuries, past pain and suffering should be excepted from this reduction.

## Standard of Review

Where, as here, a trial court has made special findings pursuant to a party's request under Indiana Trial Rule 52(A), the reviewing court may affirm the judgment on any legal theory supported by the findings. *Mitchell v. Mitchell*, 695 N.E.2d 920, 923–24 (Ind.1998). "[T]he court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." T.R. 52(A). When the specific issue on review relates to the award of damages, a damage award should not be reversed if within the scope of the evidence before the trial court. *Dunn v. Cadiente*, 516 N.E.2d 52, 54 (Ind.1987).

## Damages

Smith contends that he should be awarded damages in the amount of the full value of the loss of his eye. He argues that the trial court erred in applying the causation standard of Section 323 of the Restatement of Torts, which this Court endorsed in *Mayhue v. Sparkman*, 653 N.E.2d 1384, 1388–89 (Ind.1995). In *Mayhue*, the plaintiff was unable to prove that the physician's negligence proximately caused his wife's death because she had less than a fifty percent chance of survival before the negligent treatment. *See* 653 N.E.2d at 1386. Nevertheless, because the physician's negligence had precluded any chance of recovery from a fatal cancer, Section 323 provides for recovery for the increased risk of harm attributable to the defendant's conduct. *See id.* at 1388–89.

The trial court determined that Smith had a fifty percent chance of retaining vision in his right eye before the negligent acts of Washington. Based on this fact-finding, Smith argues that the trial court should have awarded full damages because it essentially determined that Washington's actions had proximately caused Smith's injuries. It is not apparent that application of Section 323 turns on the degree of initial risk that is aggravated.

However, like the Court of Appeals, we need not resolve this issue. The Court of Appeals ruled that Smith could not contend on appeal that Section 323 was inapplicable when he had argued in the trial court for its application. We agree that Section 323 governs this case.

 The trial court found that the defendant's negligence increased the risk of incurring an already likely injury from 50% to 100%. In *Cahoon*, we held that once causation is established under *Mayhue*, the plaintiff is to receive the proportion of damages traceable to the defendant's negligent act or omission. Specifically, we adopted the standard for measuring damages under Section 323 of the Restatement of Torts as set forth in *McKellips v. Saint Francis Hospital, Inc.*, 741 P.2d 467 (Okla.1987). In *McKellips*, the court held that statistical evidence should be admitted to determine the "lost chance" by subtracting the decedent's postnegligence chance of survival from decedent's prenegligence chance of survival. *Id.* at 476–77. Then, "[t]he amount of damages recoverable is equal to the percent of chance lost multiplied by the total amount of damages which are ordinarily allowed in a wrongful death action." *Id.*

Here, after determining that defendant was liable, the trial court found that Washington's negligence reduced Smith's chance of retaining vision in his right eye by fifty percent. The trial court meticulously outlined Smith's damages, but awarded fifty percent of the total damages as the amount traceable to Washington's conduct. In so doing, the trial court relied on the formula set out in *McKellips*. Judge Johnson thus predicted with precision the measure of damages this Court ultimately adopted in *Cahoon*.

Finally, Smith argues that his past pain and suffering damages, which the trial court calculated at $125,000, should be awarded in full. Smith argues that because the trial court entered the factual finding that Smith endured pain and suffering throughout Washington's treatment, the trial court erred in reducing this element of his damages award. However, the trial court did not find that this pain and suffering would have been wholly avoided if Smith had received proper treatment. Rather, the evidence permitted the inference that only a portion of Smith's past pain and suffering was due to Washington's negligence. Thus, the trial court was free to apply proportionate causation to damages on past pain and suffering. The trial court's award of damages is affirmed.

## Conclusion

We affirm the trial court and its award of damages in the amount of $182,018.92. We summarily affirm the Court of Appeals with respect to the issues of contributory negligence, the denial of a jury trial to Washington, and the statute of limitations.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.