**Ray A. HAAS, M.D., Appellant–Defendant,**

v.

**Donald H. BUSH, Personal Representative of the Estate of Elaine M. Bush, Appellee–Plaintiff.**

**No. 30A01–0706–CV–257.**

Court of Appeals of Indiana.

Sept. 29, 2008.

---

Michael E. O'Neill, Hinshaw & Culbertson LLP, Schererville, IN, Attorney for Appellant.

Timothy J. Kennedy, Montross Miller Muller Mendelson & Kennedy, Indianapolis, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

Ray A. Haas, M.D. appeals a wrongful death judgment entered in favor of Donald H. Bush, as personal representative of the estate of his deceased wife, Elaine M. Bush (the Estate). Dr. Haas presents the

following consolidated and restated issues for review:

1. Did the Indiana Supreme Court exceed its authority under the Indiana Constitution when it adopted Section 323 of the Restatement (Second) of Torts?

2. Did the trial court erroneously admit the written opinion of the medical review panel into evidence?

We affirm.[1]

On January 16, 2002, Elaine was admitted to the hospital with complaints of nausea, vomiting, blood in her stool, and abdominal pain. Elaine's family physician, Dr. Haas, did not see her on the day of her admission. The following morning, Dr. Gary C. Sharp, who routinely covered patient care for Dr. Haas, saw Elaine and, among other things, ordered a CT scan of her chest for complaints that were believed to be related to pneumonia and to rule out cancer. The chest CT, which was performed that day, revealed "an irregularly outlined soft tissue mass involving the posterolateral portion of the right lower lung field." *Appellant's Appendix* at 195. The radiologist's report provided the following impression:

> Findings described are compatible with a segmental pneumonia involving the right lower lobe. The radiographic appearance is that of a consolidated bronchopulmonary segment. *Underlying malignancy in this area cannot be excluded, however, and for this reason a followup study in 6 or 8 weeks is recommended.*

*Id.* at 195–96 (emphasis supplied).

Dr. Haas evaluated Elaine on the morning of January 18, and discharged her later that day. Dr. Haas did not discuss the results of the CT scan with Elaine either during her hospitalization or at her follow-up appointment with him in his office on February 1. Other than reading and initialing the January 17, 2002 chest CT scan report, Dr. Haas apparently did nothing in response to it and did not order a follow-up CT scan.

On March 17, 2003, Elaine went to Dr. Nadya Ajanee, an Indianapolis internist, complaining of left arm numbness and decreased fine motor skills. Dr. Ajanee sent Elaine to the emergency room where tests revealed that Elaine had a large malignant mass in the lower lobe of her right lung, the same location as the mass indicated on the CT scan fourteen months earlier. The lung cancer had now metastasized to her brain. Despite two courses of aggressive treatment, Elaine died on July 26, 2003.

In January 2002, Elaine's tumor was four to five centimeters. There was no lymph node involvement or metastasis to other organs, and the mass in her lung could have been surgically removed. This translates to stage 1B lung cancer. If diagnosed and treated at that stage, Elaine would have had a 40 to 50% chance of survival. By March 2003, however, her lung cancer had metastasized to her brain and progressed to stage 4 with a 1 to 2% chance of survival.

On December 22, 2003, pursuant to the Indiana Medical Malpractice Act, the Estate filed a proposed complaint for damages before the Indiana Department of Insurance. A medical review panel (MRP) was formed, consisting of three family practice physicians. With respect to Dr. Haas, the MRP issued the following unanimous opinion on July 5, 2005: "The evidence supports the conclusion that the defendant RAY HAAS, M.D. failed to comply

---

1. We held oral argument in Indianapolis on September 3, 2008. We commend counsel for their candor and the quality of their briefs and arguments.

with the appropriate standard of care as charged in the complaint. The conduct complained of caused the plaintiff a loss of chance of treatment/survival." *Id.* at 113–15. On July 19, 2005, the Estate filed its complaint against Dr. Haas, claiming his malpractice increased the risk of Elaine's death.

At trial, Dr. Haas stipulated that he breached the standard of care by failing to advise Elaine about the findings from her January 17, 2002 CT scan. Dr. Haas, however, argued the Estate could not establish that his breach was the proximate cause of Elaine's death. At the close of the Estate's evidence, Dr. Haas moved for a judgment on the evidence "on the ground that [the Estate] has failed to present evidence, pursuant to the requirements of the Wrongful Death Act, that Dr. Haas caused the death of [Elaine]." *Id.* at 139. After hearing argument, the trial court denied Dr. Haas's motion. On March 19, 2007, the jury returned a verdict in favor of the Estate, awarding damages in the amount of $980,000. Dr. Haas now appeals.

### 1.

■ In *Mayhue v. Sparkman*, 653 N.E.2d 1384 (1995), our Supreme Court held that a plaintiff is not precluded from bringing a medical malpractice claim against a negligent doctor merely because the plaintiff is unable to prove by a preponderance of the evidence that the doctor's conduct was the proximate cause of the resulting injury. In so holding, the Court adopted Section 323 of the Restatement (Second) of Torts, which provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting

from his failure to exercise reasonable care to perform his undertaking, if:

(a) his failure to exercise such care increases the risk of such harm, or;

(b) the harm is suffered because of the other's reliance upon the undertaking.

"This doctrine permits recovery from a defendant whose negligence significantly increases the probability of the ultimate harm, even if the likelihood of incurring that injury was greater than fifty percent in the absence of the defendant's negligence." *Cahoon v. Cummings*, 734 N.E.2d 535, 539 (Ind.2000).

In the instant case, the evidence established Elaine was more likely than not to die from her lung cancer even if it had been diagnosed and treated in January 2002. The Estate was clearly unable to establish that Dr. Haas's negligence proximately caused Elaine's death. Therefore, relying on *Mayhue* and the line of cases following, the Estate proceeded under the theory that the doctor's negligence increased her risk of death.

■ On appeal, Dr. Haas reasserts the argument he made to the trial court that the relaxed causation standard of *Mayhue* is inapplicable in a wrongful death case because the wrongful death statute, by its terms, demands that the defendant's actions be the proximate cause of the death of the victim. Thus, he claims the "Supreme Court's action in permitting a lesser burden of proof, in the face of legislation to the contrary, violates Article 3 and Article 4 of the Indiana Constitution, regarding separation of powers and legislative and policy making functions in government." *Appellant's Brief* at 10.

Dr. Haas urges us to reconsider and abrogate the doctrine adopted by our Supreme Court in *Mayhue* and addressed by

the Court three times since.[2] We reject this invitation, as our Supreme Court has unambiguously spoken on the matter. Specifically, in *Cahoon*, the Court addressed the defendants'/appellants' claim that *Mayhue* is inapplicable in the wrongful death context because the plain language of the wrongful death statute requires a plaintiff to establish proximate causation. The Court disagreed, explaining:

> The relevant provision [of the wrongful death statute] reads:
>> When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she ... lived, against the latter for an injury for the same act or omission.

Ind.Code § 34-23-1-1 (1998). The Court of Appeals held that the causation standard of *Mayhue* applied in the context of the wrongful death action, concluding that: "[T]he intent of the wrongful death statute was to allow an action to be brought by the decedent's personal representative against a defendant who may be held legally liable for the death, regardless of the mechanism of liability." *Cahoon [v. Cummings]*, 715 N.E.2d [1, 7 (Ind.Ct.App.1999)]. We agree with the Court of Appeals that the statute is consistent with the *Mayhue* standard of causation. The wrongful death statute requires causation, but it does not spell out what is meant by that term and does not specify that a plaintiff must establish proximate causation. The trial court instructed the jury on the causation standard of *Mayhue* as follows: "In this case you must first determine if the

Defendant's negligence increased the risk of harm to Ted Cummings, and whether the increased risk was a substantial factor in his death on August 15, 1993." This is an accurate recitation of the causation standard of *Mayhue*. *Mayhue* identified the reasons to permit recovery in a loss of consortium case for increased risk of the ultimate injury—in that case death. Principally, to deny recovery is to encourage disregard for the proper care of more seriously ill patients. Those with serious problems but also a significant chance of recovery are entitled to the same level of care as less threatened patients, and their caregivers should be held to the same standard. Accordingly, this instruction was properly given.

Finally, the defendants note that *Mayhue* presented a loss of consortium claim and urge this Court to limit *Mayhue* to its facts. Although it is true that *Mayhue* involved a loss of consortium claim, the policy underlying *Mayhue* is equally compelling here. We see no basis to allow a relaxed standard of causation in the loss of consortium context, but not the wrongful death context. The wrongful death statute is intended to provide economic support to survivors, and a loss of consortium claim compensates the plaintiff for loss of companionship of the decedent. The issue addressed in *Mayhue* is the level of causation required, not the type of claim brought. This is the same because the event giving rise to each injury—the death—is the same. Consistent with other jurisdictions, we hold that Section 323 applies in the wrongful death context. *See, e.g., McKellips v. Saint Francis Hosp., Inc.*, 741 P.2d 467, 469–70 (Okla.1987); *Perez v. Las Vegas*

---

**2.** *See Smith v. Washington*, 734 N.E.2d 548 (Ind.2000); *Cahoon v. Cummings*, 734 N.E.2d 535; *Alexander v. Scheid*, 726 N.E.2d 272 (Ind.2000).

*Med. Ctr.*, 107 Nev. 1, 805 P.2d 589, 591 (1991) (following *McKellips* ).

*Cahoon v. Cummings*, 734 N.E.2d at 539–40 (footnotes omitted).

Thus, our Supreme Court has expressly found that the *Mayhue* standard of causation (Section 323) is consistent with the wrongful death statute.[3] Moreover, in the thirteen years since *Mayhue* and eight years since *Cahoon*, the legislature has not enacted any law altering the Court's adoption of Section 323. *See Fraley v. Minger*, 829 N.E.2d 476, 492 (Ind.2005) ("it is well-established that a judicial interpretation of a statute, particularly by the Indiana Supreme Court, accompanied by substantial legislative inaction for a considerable time, may be understood to signify the General Assembly's acquiescence and agreement with the judicial interpretation"). *See also Robbins v. Baxter*, 799 N.E.2d 1057 (Ind. 2003) (applying legislative acquiescence where no legislative response for ten years). Therefore, we reject Dr. Haas's separation of powers argument regarding the constitutionality of *Mayhue* and its progeny.[4]

2.

■ Dr. Haas next argues the trial court abused its discretion when it admitted the written opinion of the MRP into evidence at trial over his objection. He claims the portion of the MRP opinion regarding a breach of the standard of care was rendered irrelevant, misleading, cumulative, and more prejudicial than probative by the stipulation entered into by the parties acknowledging said breach. Moreover, he argues the portion of the opinion concerning damages included the opinion that Elaine sustained a loss of chance as a result of the breach. In this regard, he claims the opinion had no foundation, was unreliable, and was outside the expertise of the panel members, all family practice physicians. Finally, Dr. Haas complains the opinion purported to resolve a contested issue of fact—whether Elaine was aware of the recommendation for follow-up.

Once again, our Supreme Court has spoken on the matter. Ind.Code Ann. § 34–18–10–23 (West 1999) provides:

A report of the expert opinion reached by the medical review panel is admissible as evidence in any action subsequently brought by the claimant in a court of law. However, the expert opinion is not conclusive, and either party, at the party's cost, has the right to call any member of the medical review panel as a witness. If called, a witness shall appear and testify.

In *Dickey v. Long*, 591 N.E.2d 1010 (Ind. 1992) (*Dickey II*), the Court held that the provision for admissibility of the panel's

---

3. Contrary to Dr. Haas's apparent assertion on appeal, we observe that proportional damage recoveries in cases like this are not in conflict with the Comparative Fault Act, which expressly excludes medical malpractice claims from its purview. *See* Ind.Code Ann. § 34–51–2–1(b)(1) (West 1999). The *Mayhue* line of cases simply does not affect the continued application of the complete defense of contributory negligence in medical malpractice cases. To be sure, had Elaine been contributorily negligent, the Estate would not have been able to recover damages. The mere fact of her illness, however, did not render her contributorily negligent.

4. Dr. Haas also raises a constitutional challenge under the Privileges and Immunities Clause, article 1, section 23 of the Indiana Constitution. This argument, which was not addressed at oral argument, appears to have been presented in Dr. Haas's brief almost in passing. We do not find it persuasive. Moreover, Dr. Haas waived the issue by failing to present it to the trial court. *See Ryan v. Brown*, 827 N.E.2d 112 (Ind.Ct.App.2005) (failure to raise an issue at trial court results in waiver of that issue on appeal).

opinion is " 'unambiguous and absolute.' " *Id.* at 1011 (quoting *Dickey v. Long,* 575 N.E.2d 339, 340 (Ind.Ct.App.1991) (*Dickey I*)). Rejecting the contention that there were certain circumstances that could render the panel's opinion inadmissible, the Court adopted the opinion of our court in *Dickey I.* As explained in *Dickey I,* the statute "contains safeguards for complainants who wish to attack the efficacy of the panel's decision." *Dickey v. Long,* 575 N.E.2d at 340. By statute, the panel's expert opinion "is not conclusive" and either party may examine a panelist as a witness and the panelists are required to appear and testify if called. I.C. § 34–18–10–23. Thus, any alleged frailties in the panel opinion could have been exposed at trial and judged by the trier of fact. *See Dickey v. Long,* 575 N.E.2d 339. We find no error in the admission of the panel's opinion at trial.

Judgment affirmed.

KIRSCH, J., and BAILEY, J., concur.