INDIANA DEPARTMENT OF INSURANCE, INDIANA PATIENT'S COMPENSATION FUND, Appellant–Defendant,

v.

**Robin EVERHART, Personal Representative of the Estate of James K. Everhart, Jr., Appellee–Plaintiff.**

No. 84A01–0912–CV–614.

Court of Appeals of Indiana.

July 21, 2010.

Elizabeth H. Knotts, Rori L. Goldman, Indianapolis, IN, Attorneys for Appellant.

James O. McDonald, Terre Haute, IN, John P. Young, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Senior Judge.

Appellant Indiana Department of Insurance, Indiana Patient's Compensation Fund (the Fund) appeals the trial court's Findings of Fact, Conclusions of Law, and Judgment in favor of Appellee Robin Everhart, as Personal Representative of the Estate of James K. Everhart, Jr. (Everhart). We reverse and remand.

On October 4, 2004, James K. Everhart, Jr. (James) was riding his motorcycle in Terre Haute, Indiana, when he was run over by a semi-truck. James suffered severe injuries and was taken to Terre Haute Regional Hospital, where he was treated by Dr. C. Bilston Clarke. James died in the emergency room. Testimony introduced at a trial court hearing indicated that if Dr. Clarke had administered appropriate medical care, James would have had a "better than 80% chance" of surviving his injuries. Appellant's Appendix p. 338.

Everhart sued the truck driver's employer, and the parties settled the case. Everhart also sued Dr. Clarke. The parties settled the case for $250,000 in a structured settlement before a medical review panel issued its decision.

Next, Everhart filed a claim against the Fund for excess damages resulting from James' wrongful death.[1] After a hearing, the trial court entered judgment in Everhart's favor in the amount of $1,000,000.00. The trial court noted, in relevant part:

17. To the Patient's Compensation Fund's Credit, it did not advocate that Mr. Everhart's widow and son had been fully compensated based on the settlements previously received from the trucking company and Dr. Clarke's insurance company. Instead, utilizing a theoretical eighty percent (80%) chance of Mr. Everhart surviving his injuries, if he had received appropriate medical care, the Fund advocated an award of an additional Five Hundred Thousand Dollars ($500,000.00). However, that calculation is based on a misconstruction of the Loss of Chance Doctrine. See *Cahoon v. Cummings*, 734 N.E.2d 535, 544 (Ind.Ct.App.2000) [ (Ind.2000) ] and *Mayhue v. Sparkman*, 653 N.E.2d 1384, 1387 (Ind.1995). Here, where the Plaintiff has proven by a preponderance of

---

1. The Third Amended Complaint against the Fund specifically asserted that the claim against Dr. Clarke was "a wrongful death" claim. Appellant's App. p. 40.

the evidence that had Mr. Everhart been rendered proper medical care upon his admission to the emergency trauma care room, he would have survived his injuries, no basis exists for basing the Estate's damages on any allocation percentage of survivability or lost chance of survival. Therefore, were this Court to accept the Fund's advocated values for each of the elements of damages which the Estate is entitled to recover, the Court would increase the Fund's propounded award by twenty percent (20%) or Seven Hundred Thousand Dollars ($700,000.00).

Appellant's Appendix p. 21.[2]

The Fund raises two issues, which we restate as:

A. Whether the trial court erred by awarding full damages to Everhart rather than damages in proportion to the increased risk of harm to James resulting from medical malpractice.

B. Whether the Fund is entitled to a set-off for Everhart's settlement with another party, and, if so, whether the set-off should be reduced to account for Everhart's attorney's fees and expenses.

## I. STANDARD OF REVIEW

■ At the Fund's request, the trial court issued findings of fact and conclusions pursuant to Indiana Trial Rule 52. Typically, when reviewing a judgment based on such findings, we must first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Atterholt v. Robinson*, 872 N.E.2d 633, 638–639 (Ind. Ct.App.2007). We will set aside the trial court's findings of fact and judgment only

if they are clearly erroneous. *Id.* at 639. Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them and the judgment is clearly erroneous if it is unsupported by the findings and conclusions thereon. *Id.* In assessing whether findings are clearly erroneous, we will not reweigh the evidence nor judge the credibility of the witnesses. *Id.* Rather, we consider the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.* A finding or conclusion is clearly erroneous when our review of the evidence leaves us with the firm conviction that a mistake has been made. *Id.* While we defer to the trial court's findings of fact, we do not defer to its conclusions as to the applicable law. *Id.* When the specific issue on review relates to the award of damages, a damage award should not be reversed if within the scope of the evidence before the trial court. *Smith v. Washington,* 734 N.E.2d 548, 550 (Ind.2000), *reh'g denied.*

## II. PROBABLE CAUSE AND DAMAGES

■ The Indiana Medical Malpractice Act (MMA) was adopted by the General Assembly under an apparent perception or misperception that the availability of healthcare services in Indiana was being eroded by tort suits, and that the MMA might help control the costs of medical liability insurance, litigation, settlements, and excessive judgments against healthcare providers. *Mayhue v. Sparkman,* 653 N.E.2d 1384, 1386 (Ind.1995). The MMA allows a patient or the representative of a patient to bring a malpractice claim for bodily injury or death. *Robin-*

---

**2.** We would parenthetically note an apparent mathematical miscalculation or scrivener's error in that a 20% increase of the advocated $500,000 award would add $100,000 for a total of $600,000 rather than $700,000.

*son,* 872 N.E.2d at 639 (quotation omitted). The MMA does not create substantive rights or new causes of action and, instead, merely requires that claims for medical malpractice that are otherwise recognized under tort law and applicable statutes be pursued through the procedures of the MMA. *Id.* at 839–840 (quotation omitted).

■ Here, Everhart filed a claim for wrongful death. Wrongful death actions may be pursued when "the death is caused by the wrongful act or omission of another." *Id.* (citing Ind.Code § 34–23–1–1, emphasis omitted). Wrongful death actions are purely statutory, and their purpose is not to compensate the decedent's estate for the injury but, instead, to create a cause of action to compensate the decedent's survivors for the loss sustained by the death. *Id.*

■ The Fund contends that the trial court's method of calculating damages did not follow our Supreme Court's precedent. Specifically, the Fund contends that because James had an 80% chance of surviving his injuries but for Dr. Clarke's malpractice, Everhart is only entitled to damages in proportion to the increase in risk of harm that was caused by the malpractice. Everhart argues that the trial court properly determined that she was entitled to full compensation from the Fund in the amount of $1,000,000.00.

Both parties discuss *Mayhue* and cases applying that decision. In *Mayhue,* a patient's estate sued a physician for medical malpractice, alleging that the physician's failure to adequately treat the patient's recurring cervical cancer resulted in her death and caused the patient's spouse to experience loss of consortium. 653 N.E.2d at 1385. The parties agreed that even if the physician had properly diagnosed and treated the recurring cancer, the patient had a less than 50 percent chance of recovery. *Id.* at 1386. Therefore, the physician asserted that his negligence could not be "the proximate cause" [3] of the patient's death, and the estate was not entitled to any damages, because it was more likely than not that the patient would have died even with proper treatment. *Id.* Our Supreme Court rejected the physician's contention and adopted the approach set forth in Restatement (Second) of Torts § 323 (1965) for the assessment of damages in the circumstances of the case. *Id.* at 1839. That section provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965). Consequently, our Supreme Court affirmed the trial court's denial of the physician's motion for summary judgment and remanded for further proceedings. *Mayhue,* 653 N.E.2d at 1389.

Next, our Supreme Court applied the holding in *Mayhue* to a medical malpractice case concerning wrongful death. In *Cahoon v. Cummings,* 734 N.E.2d 535, 538 (Ind.2000), two doctors misdiagnosed a patient's esophageal cancer. The patient died, and his wife sued the doctors for wrongful death, among other claims. *Id.* At trial, experts testified that if the doc-

---

**3.** Use of the word "the" in relationship to proximate cause connotes that there is only a single cause and disregards the reality that there may be multiple proximate causes.

tors had properly diagnosed the patient's cancer, he had a twenty-five to thirty percent chance of surviving the cancer. *Id.* at 539. The wife prevailed at trial, and the doctors appealed, claiming that the jury instructions were erroneous. *Id.* at 538. Specifically, the doctors contended that the jury should not have been instructed on the causation standard set forth in *Mayhue* because this was a wrongful death action, not a claim for loss of consortium. *Id.* at 539. Our Supreme Court disagreed, noting that the purpose of the holding in *Mayhue* was to ensure that patients with serious problems, but also a significant chance of recovery, receive the same level of care as less threatened patients. *Id.* at 540. Thus, our Supreme Court concluded that the causation standard set forth in Section 323 of the Restatement (Second) of Torts applies in medical malpractice cases concerning wrongful death. *Id.*

Another issue in *Cahoon* was whether the decedent's wife was entitled to full, rather than proportional, damages if the jury determined that the doctors' malpractice was a substantial factor in the patient's death. *Id.* The trial court had instructed the jury that the spouse could receive full damages, and our Supreme Court reversed. *Id.* at 539. The Court reasoned,

> [h]olding the defendant liable for the full value of the wrongful death claim is inconsistent with the statutory requirement that the loss be caused by the defendant who only increased the risk of an already likely result. In effect, it would hold doctors liable not only for their own negligence, but also for their

patients' illnesses, which are not the product of the doctors' actions.

*See Id.* at 541. Thus, the Court concluded that the trial court erred by instructing the jury that it could award full damages rather than awarding damages in proportion to the increased risk occasioned by the doctors' malpractice. *Id.*

In *Smith v. Washington*, 734 N.E.2d 548, 549 (Ind.2000), *reh'g denied,* a patient alleged that an ophthalmologist failed to properly treat an eye that had been injured in a car accident, and that he lost the use of the eye after the ophthalmologist's treatment. The patient sued the ophthalmologist for medical malpractice. *Id.* At a bench trial, evidence indicated that it was fifty percent likely that the patient would have lost his vision in the eye even in the absence of the ophthalmologist's malpractice.[4] *Id.* at 550. The trial court found in favor of the patient but reduced his damages by fifty percent to account for the chance that the patient would have lost the use of his eye even without the ophthalmologist's malpractice. *Id.* On appeal, our Supreme Court reaffirmed its holding in *Cahoon,* noting "once causation is established under *Mayhue,* the plaintiff is to receive the proportion of damages traceable to the defendant's negligent act or omission." *Id.* at 551. Thus, the Court affirmed the trial court's award of damages. *Id.*

Most recently, in *Atterholt v. Herbst,* 902 N.E.2d 220, 223 (Ind.2009), *clarified on reh'g,* 907 N.E.2d 528 (Ind.2009), our Supreme Court applied *Mayhue* in a case involving the Fund. A patient's physician

---

4. In this Court's opinion in that case, we indicated that the evidence demonstrated that the patient had "at least" a fifty percent chance of retaining vision in his eye in the absence of malpractice. *Smith v. Washington,* 716 N.E.2d 607, 611 (Ind.Ct.App.1999), *vacated on transfer.* On transfer, Supreme Court simply stated that the patient had a fifty percent chance of retaining vision in his eye, and it is unclear whether the possibility that the patient had a greater than fifty percent chance of retaining vision in his eye played a role in the Court's decision.

misdiagnosed fulminant myocarditis as pneumonia, and the patient died. *Id.* at 221. The patient's estate sued the doctor and others for medical malpractice resulting in wrongful death. *Id.* The estate settled with the doctor and subsequently filed an action against the Fund, seeking the statutory maximum in additional damages. *Id.* At trial, the trial court excluded evidence tendered by the Fund that even with proper care, the patient had less than a ten percent chance of surviving the myocarditis. *Id.* at 222. Our Supreme Court concluded that evidence of the patient's underlying risk of death whether or not he was properly treated should have been admitted because it was relevant not only to the question of liability but as well to valuation of damages. *Id.* at 223. The Court noted that its holding comported with basic tort principles, under which "liability is established if the defendant's negligence causes the plaintiff's damages, but the extent of damages is limited to the damage caused by the defendant." *Id.* at 224.

The Fund contends that our Supreme Court's holdings in *Mayhue, Cahoon, Smith* and *Herbst* compel a conclusion that Everhart is entitled to proportional, rather than full, damages from the Fund. In response, Everhart contends that these cases are inapplicable here due to one factual difference. In each of those cases, the patient had a fifty percent or less chance of overcoming the injuries in question but for medical malpractice. In this case, Everhart notes, James had a "better than 80% chance" of surviving his injuries if Dr. Clarke had provided adequate care. Appellant's Appendix p. 338. Therefore, Everhart argues, there is no need to calculate proportional damages here, and Everhart is entitled to full damages.

We do not agree with Everhart. Restatement (Second) of Torts § 323, which this Court adopted in *Mayhue*, provides that a person is liable to another for injuries caused by the person's failure to exercise due care only when "failure to exercise such care increases the risk of such harm." That provision is not limited to cases where the risk of harm absent negligence is greater than fifty percent. Furthermore, as our Supreme Court has noted, "[i]t is not apparent that application of Section 323 turns on the degree of initial risk that is aggravated." *Smith,* 734 N.E.2d at 551.

In addition, as we noted above, in *Cahoon* our Supreme Court asserted that doctors should be held liable for their own negligence and not for conditions that are not the product of the doctor's actions. 734 N.E.2d at 541. Compensation for injuries caused is the basis for recovery for a wrongful death. *Id.* These considerations apply with equal force whether the patient would have had more or less than a fifty percent chance of survival absent a doctor's negligence.

Furthermore, we note that in the line of cases discussed above our Supreme Court has repeatedly referred to general principles of tort liability in the context of medical malpractice damages. In *Cahoon,* our Supreme Court noted that the rule set forth in Section 323 is "consistent with the legislative policy underlying Indiana law of apportionment of damages for tort liability generally. Under Indiana's comparative fault scheme, a defendant is liable only to the degree he or she is responsible for the claimant's injury or damages." *Id.* In *Herbst,* the Court reiterated that liability for damages is generally limited to the damage caused by the defendant. 902 N.E.2d at 224. Once again, these principles are not limited in application to cases where the patient had less than a fifty-one percent chance of surviving absent medical malpractice.

Based on the foregoing, it is not consistent with Supreme Court precedent to hold the Fund liable for more than the increased risk of harm that Dr. Clarke caused. To determine, as Everhart requests, that she is entitled to full recovery from the Fund even though James had approximately only an eighty percent chance of survival absent medical malpractice would, in effect, hold the Fund accountable for damages for which Dr. Clarke was not responsible. Consequently, the trial court's conclusions are not supported by caselaw, and we are left with a firm conviction that a mistake has been made.

Total recovery for medical malpractice is limited by statute to $1,250,000. Ind.Code § 34–18–14–3. The health care provider is responsible for no more than $250,000. *Id.; see generally Herbst*, 902 N.E.2d 220 (Ind.2009). This leaves a maximum allowable recovery by Everhart from the Patient's Compensation Fund of $1,000,000. This was the amount requested by Everhart in his petition and was the amount awarded to Everhart from the Fund. The damage award by the trial court was therefore the maximum allowable under the law.

■ We reverse and remand with instructions to the trial court to recalculate its damages award and award damages to Everhart in proportion to the increase in risk of harm that was caused by Dr. Clarke's malpractice. The trial court has previously found that James had "better than an eighty percent (80%) chance of surviving his injuries," Appellant's App. at 19–20, and that the damages as a result of James' death "far exceed[ ] Three Million One Hundred Fifty Thousand Dollars ($3,150,000)," *id.* at 30. A precise calculation is required. The trial court must determine the actual percentage chance of survival and the actual amount of damages

on remand. It is the trial court's prerogative to make this calculation, but we note that given the trial court's earlier findings, and the precise calculations, the maximum statutory award of $1,000,000 may nevertheless be justified.

## III. CALCULATION OF DAMAGES

The Fund contends that it is entitled to a set-off against any damage award for the amount that Everhart received in her settlement with the truck driver's employer. The Fund also asks this Court to determine whether the Fund's set-off must be reduced by Everhart's attorneys' fees and costs.

The trial court expressly declined to address these issues in its "Findings of Fact, Conclusions of Law, and Judgment." The trial court noted that it made its decision "[w]ithout deciding whether the [Fund] should receive full or only partial credit for the sums which the estate recovered from the trucking company...." Appellant's Appendix, p. 17. Furthermore, with respect to the Estate's attorneys' fees and costs, the trial court noted:

20. [Everhart's] counsel further advocated that any set off which the Court might make in entering its ultimate judgment in this matter, from the settlement proceeds received by the estate should be reduced by the amount of the estate's costs for attorney fees and litigation expenses in recovering those funds. Citing principles of unjust enrichment and the common fund doctrine.

21. Obviously, if the Court determined that the estate's full damages as a result of Jaime's wrongful death are in excess of $3,150,000.00, no need exists to test whether [sic] the advocacy of [Everhart's] counsel with regard to an application of the common fund and/or unjust

enrichment doctrines would withstand appellate review."

Appellant's Appendix p. 28.

We decline to address issues upon which the trial court did not rule. The trial court must address these issues upon remand.

## CONCLUSION

For these reasons, we reverse the trial court's judgment and remand for a recalculation of damages consistent with this opinion.

Reversed.

BAKER, C.J., and ROBB, J., concur.