**INDIANA DEPARTMENT OF INSURANCE, INDIANA PATIENTS COMPENSATION FUND, Appellant–Defendant,**

v.

**Robin EVERHART, Personal Representative of the Estate of James K. Everhart, Jr., Appellee–Plaintiff.**

No. 84A01–0912–CV–614.

Court of Appeals of Indiana.

Dec. 21, 2010.

Elizabeth H. Knotts, Rori L. Goldman, Indianapolis, IN, Attorneys for Appellant.

James O. McDonald, Terre Haute, Indiana, John P. Young, Indianapolis, IN, Attorneys for Appellee.

## DISSENT TO ORDER DENYING PETITION FOR REHEARING

ROBB, Judge.

In *Indiana Dep't of Ins. v. Everhart*, 932 N.E.2d 684 (Ind.Ct.App.2010), we addressed the issue of whether the Indiana Patient's Compensation Fund (the "Fund") was liable for the full amount of excess damages when in the absence of a doctor's negligence, the decedent would have had a "better than 80% chance" of surviving injuries incurred in an automobile accident. The trial court awarded to the Estate of James Everhart the statutory maximum damages of $1,000,000 and the Fund appealed. We reversed, holding the trial court should have awarded damages only in proportion to the increase in risk of harm that was caused by the malpractice, relying on the approach set forth in Restatement (Second) of Torts § 323 ("section 323") and adopted in *Mayhue v. Sparkman*, 653 N.E.2d 1384 (Ind.1995). *Everhart*, 932 N.E.2d at 689–90. Everhart has petitioned for rehearing, contending section 323 should not be applied under the facts of this case. Upon revisiting the case as a whole, I agree and would grant the rehearing. I therefore respectfully dissent from my colleagues' denial of Everhart's petition for rehearing.

*Mayhue* was decided in the context of a patient who died as a result of cancer which was misdiagnosed by her physician for a time, leaving her with a decreased chance of effective treatment. However, the evidence was that the patient would more likely than not have died from the cancer even in the absence of malpractice. Our supreme court noted:

> Where a patient's illness or injury already results in a probability of dying greater than 50 percent, an obvious problem appears. No matter how negligent the doctor's performance, it can never be the proximate cause of the patient's death. Since the evidence establishes that it is more likely than not that the medical problem will kill the patient, the disease or injury would always be the cause-in-fact. The plaintiff must ordinarily prove that proper diagnosis and treatment would have prevented the patient's injury or death. *In cases such as this one*, it appears that a defendant would always be entitled to summary judgment.

653 N.E.2d at 1387 (emphasis added). In order to address such a situation, the court adopted the approach outlined in section 323 wherein one is liable for harm to another if the failure to exercise reasonable care increases the risk of such harm. "When § 323 governs a case, it permits the plaintiff to avoid summary judgment on the issue of proximate cause even when there was a less than 50 percent chance of recovery absent the negligence." *Id.* at 1388. The plaintiff must prove negligence and an increase in the risk of harm in order to survive summary judgment, and then must prove to the finder-of-fact by a preponderance of the evidence that the negligence was a substantial factor in causing the harm. *Id.*

In *Alexander v. Scheid*, 726 N.E.2d 272 (Ind.2000), the court characterized the situation addressed by *Mayhue* as arising because

> under traditional medical malpractice theory, when a patient's chance of recovering from a disease is already less than fifty percent, it can never be said that

the doctor's malpractice was the proximate cause of the ultimate death. Accordingly, *recovery under traditional tort standards of causation is barred under those circumstances.*

*Id.* at 276 (emphasis added). Because the patient in *Mayhue* was more likely than not to have died even in the absence of the doctor's negligence, *Atterholt* described the question presented to the *Mayhue* court as "whether a plaintiff may maintain a cause of action for medical malpractice even though traditional causation standards may not be satisfied." *Id.* at 279. *See also Cahoon v. Cummings,* 734 N.E.2d 535, 539 (Ind.2000) (noting the court in *Mayhue* had adopted section 323, a doctrine which "permits recovery from a defendant whose negligence significantly increases the probability of the ultimate harm, even if the likelihood of incurring that injury was greater than fifty percent in the absence of the defendant's negligence"); *Haas v. Bush,* 894 N.E.2d 229, 232 (Ind.Ct.App.2008) (noting that because patient was more likely than not to die from lung cancer even if it had been diagnosed earlier, her estate was unable to establish the doctor's negligence proximately caused her death and therefore proceeded under the theory that the negligence increased her risk of death pursuant to the *Mayhue* line of cases), *trans. denied; Wolfe v. Estate of Custer ex rel. Custer,* 867 N.E.2d 589, 596 (Ind.Ct.App. 2007) (noting the Indiana Supreme Court adopted the standard set forth in section 323 which "allows recovery where a negligent health care provider claims that the recovery of damages is not warranted because the patient would have suffered injury or death anyway" because "a traditional

proximate cause analysis is inequitable in certain medical malpractice actions") (quotation omitted), *trans. denied; Dughaish ex rel. Dughaish v. Cobb,* 729 N.E.2d 159, 166 (Ind.Ct.App.2000) ("Before a plaintiff in a medical malpractice action may invoke the 'increased risk of harm' standard, the plaintiff must establish that it is within the class of plaintiffs to which the lesser standard of causation under Section 323 may be applied. If a plaintiff cannot carry its burden to invoke Section 323, the traditional standard of proximate cause will be applicable."), *trans. denied.*[1] Cases following *Mayhue* have all presented malpractice claims that could not have been proven under traditional tort principles and have therefore applied the section 323 "relaxed causation" analysis. Stated another way, prior to our decision in this case, no reported case applying the section 323 analysis adopted in *Mayhue* had done so in the context of a claim by or on behalf of a patient who more likely than not would have survived absent a doctor's negligence.

When section 323 applies, the appropriate measure of damages is in proportion "to the increased risk attributable to the defendant's negligent act or omission." *Cahoon,* 734 N.E.2d at 541. This is consistent with Indiana law regarding apportionment of damages for tort liability generally, wherein a defendant is liable only to the degree he or she is responsible for the injury or damages. *Id.; see also* Ind.Code §§ 34–51–2–1 to –19 (comparative fault). Comparative fault, however, is not applicable in a medical malpractice case, Ind.Code § 34–51–2–1(b)(1), and therefore, medical malpractice actions are generally an all or nothing proposition. *See Cavens v. Zaber-*

---

1. In *Gardner v. Pawliw,* 150 N.J. 359, 696 A.2d 599 (1997), the New Jersey Supreme Court noted that it had, as had a majority of jurisdictions including Indiana, modified the "but for" causation standard and "lessened the traditional burden of proof on a plaintiff asserting a medical-malpractice claim for establishing proximate cause in the case of a plaintiff suffering from a preexistent condition." *Id.* at 608.

*dac*, 849 N.E.2d 526, 529 (Ind.2006) ("Under Indiana law, the historic common law defense of contributory negligence remains available to defendants in cases alleging medical malpractice."). The section 323 measure of damages appropriately compensates the plaintiff for the injuries caused by the doctor's negligence without also holding the doctor liable for the patient's illness or injury which was not caused by the doctor. *Cahoon*, 734 N.E.2d at 541. In *Atterholt v. Herbst*, 902 N.E.2d 220 (Ind.2009), *clarified on reh'g*, 907 N.E.2d 528, the trial court excluded from an excess damages hearing the Fund's proffered testimony that even with proper care, the decedent had a less than ten percent chance of surviving his condition, and awarded the statutory maximum damages to the estate. Applying this damages analysis, our supreme court held that evidence of a patient's underlying risk of death whether or not he was properly treated was relevant both to liability and to damages, and therefore, even though the patient's estate had settled with the health care providers as to liability, the Fund was entitled to admit testimony regarding evidence of increased harm caused by the medical negligence in the action to recover excess damages. *Id.* at 223–24. If the decedent had only a ten percent chance of surviving even with proper care, the doctors' negligence "increased his chance of harm by no more than ten percent, and the Fund is liable for only ten percent of the value of his survival." *Id.* at 224.

Turning to this case with the above framework in mind, the evidence established that if Dr. Clarke had administered proper care to James when he arrived in the emergency room following a traffic accident, James would have had a "better than 80% chance" of surviving his injuries. *Everhart*, 932 N.E.2d at 685. Everhart settled with the doctor and then sought an award of excess damages from the Fund. The trial court awarded Everhart the statutory maximum damages of $1,000,000. The Fund appealed, contending Everhart was entitled only to damages in proportion to the increased risk of harm pursuant to the *Mayhue* decision and following cases. We analyzed the cases discussed above, and disagreed with Everhart's attempt to distinguish them. Specifically, Everhart noted that in each of the *Mayhue* line of cases, the patient had a fifty percent or less chance of surviving the illness or injury in question even in the absence of medical negligence, whereas his chance of survival was estimated to be greater than eighty percent in the absence of negligence. We disagreed with Everhart's contention, stating that the principles of the *Mayhue* decisions "are not limited in application to cases where the patient had less than a fifty-one percent chance of surviving absent medical malpractice." *Id.* at 689.

After re-reading and reflecting further on those cases, I disagree. I believe the fact that the patients in the *Mayhue* line of cases had a less than fifty percent chance of recovery or survival absent medical negligence was critical to the holding of those cases. In my view, section 323 was adopted in *Mayhue* and applied in the ensuing cases to specifically address the situation where a patient already has a less than fifty percent chance of survival. A plaintiff in such a situation could never prove under traditional tort principles that a doctor whose negligence contributed to the death was also the proximate cause, but *Mayhue* provides an avenue of recourse. Where the patient has a better than fifty percent chance of survival absent the malpractice, however, traditional tort principles do not impose a similarly inequitable result and there is no reason to apply section 323. Such is the case here. In the

absence of Dr. Clarke's negligence, James had a better than eighty percent chance of surviving his injuries. Dr. Clarke's negligence did not just increase the risk of James's inevitable death; it was the proximate cause of James's death. *See Hassan v. Begley*, 836 N.E.2d 303, 307 (Ind.Ct. App.2005) ("While a rigorous definition remains elusive, proximate cause has been defined as that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred. ... Put another way, proximate cause requires, at a minimum, that the harm would not have occurred but for the defendant's conduct.") (quotation omitted). As none of the *Mayhue* cases applied section 323 in a similar situation, I would not do so here.

Moreover, the *Mayhue* cases concerning the measure of damages are inapposite to this case, as well. In *Alexander*, the court stated:

> [L]oss of chance is better understood as a description of the injury than as either a term for a separate cause of action or a surrogate for the causation element of a negligence claim. If a plaintiff seeks recovery specifically for what the plaintiff alleges the doctor to have caused, i.e., a decrease in the patient's probability of recovery, rather than for the ultimate outcome, causation is no longer debatable. Rather, the problem becomes one of identification and valuation or quantification of that injury.

726 N.E.2d at 279. Under that analysis, damages are awarded in proportion to the increased risk attributable to the medical negligence. *Cahoon*, 734 N.E.2d at 540. If the odds are the ultimate result (the ultimate result is usually death, but does not have to be; in *Smith v. Washington*, 734 N.E.2d 548, 549 (Ind.2000), the ulti-

mate result for the plaintiff was loss of his eye) will occur regardless, it does not make sense to hold a negligent doctor liable for the ultimate result but only for his or her relative contribution to the injury. If the odds are the ultimate result would not occur absent the negligence, however, then the doctor's negligence more likely than not caused the ultimate result and the same rationale does not apply. Here, Everhart was seeking recovery for the ultimate result—death—rather than for any increased risk of death, and alleged Dr. Clarke to have been the proximate cause of that injury. In short, Everhart was proceeding under a traditional tort analysis, and I believe we should have done so, as well. Accordingly, I believe the trial court properly awarded full damages to Everhart, and I would grant the petition for rehearing and affirm the trial court's decision as to the measure of damages.

Notwithstanding my belief that we should not have applied section 323 to the facts of this case, I do note that had the odds of James's survival been twenty percent, rather than eighty, I would agree wholeheartedly with the original decision, and contrary to Everhart's assertions on rehearing, I do not believe we would have been "apportioning liability" by reducing the damages. Rather, the doctor's liability in that situation would have been twenty percent, but he would be 100 percent liable for the damages attributable to that twenty percent increased risk of death. And despite agreeing with Everhart that rehearing is warranted, I also note the overall tone of Everhart's petition for rehearing is not in general effective appellate advocacy. *See* Appellee/Plaintiff's Petition for Rehearing at 2 ("This Court's opinion destroys the foundation of our civil justice system ...."); and 11 ("If this decision stands, proximate cause is no longer meaningful, and the concept of a preponderance

of the evidence is sitting on the window sill ready to fall. The potential for appellate issues is staggering."). "Righteous indignation is no substitute for a well-reasoned argument." *WorldCom Network Servs., Inc. v. Thompson,* 698 N.E.2d 1233, 1236–37 (Ind.Ct.App.1998), *trans. denied.* I would caution counsel that future disagreement with this court can and should be addressed without unnecessary hyperbole. However, upon reconsideration, I agree with Everhart's basic assertion that the trial court's order for full excess damages should have been affirmed, and I would grant the rehearing and vacate our earlier opinion for the reasons expressed herein.